KIRCHER v. MURRAY et al.

(Circuit Court of Appeals, Fifth Circuit. February 13, 1894.)

No. 173.

1. DESCENT AND DISTRIBUTION—WHO ARE HEIRS—SPANISH LAW.
   Under the Spanish laws in force in Texas in 1836, a wife could not be heir to her husband, and under no circumstances could succeed to his separate property, except to the marital one-fourth, when necessary as relief against poverty. 54 Fed. 617, affirmed.

2. TEXAS BOUNTY LANDS—CERTIFICATE—EQUITABLE INTEREST—PATENT—COMMUNITY PROPERTY.
   The right of one who held a certificate from the state of Texas, under the act of February 15, 1858, for bounty lands for service in the army in 1835–36, was an equitable right, as was also the right of his widow, after his death, to one-half thereof as community property; and, on the subsequent issuance of a patent in his name, the legal title, by force of Rev. St. Tex. art. 3961, became vested in his heirs, and, as the widow was not an heir, her interest remained an equitable interest, which she could not enforce by action at law in a federal court. 54 Fed. 617, affirmed.

Error to the Circuit Court of the United States for the Western District of Texas.

Augusta Kircher filed this suit on the 10th of September, 1891, against R. G. Murray and five others, to recover title and possession from them of 433 acres of land described in her original petition. On the 12th of February, 1892, R. G. Murray and his codefendants answered, setting up fully the claims of plaintiff and defendants, and contending that under the facts, as pleaded, defendants were entitled to judgment. The facts being uncontroverted, the plaintiff, by demurrer and special exceptions, raised the issues in the case as to the legal effect of the given facts. The court, having heard the parties upon the issues raised, gave its written opinion sustaining the defendants' contention, and, a jury being waived, rendered judgment in the case conformable to its opinion. 54 Fed. 617. The plaintiff, in

open court, excepted to the rulings and judgment of the court, and, by proper procedure, now brings the case to this court for revision and correction of the alleged errors of the trial court.

The facts of the case are as follows: Gustave Bunsen, while in the service of the Texas army, died on the —— day of February, 1836, in Texas, intestate and without issue. He left surviving him, as his widow, the plaintiff, Augusta Kircher, (then Bunsen,) they having been married in 1834. While her husband served in the army, Mrs. Augusta Kircher (then Bunsen) lived in St. Clair county, Ill. He also left surviving him his mother, Charlotte Bunsen, and two brothers, Carl and George Bunsen, and no other kin. Charlotte Bunsen and Carl Bunsen were, when Gustave Bunsen died, and up to their respective deaths, citizens of the empire of Germany. Charlotte died December 2, 1847, and Carl died April 2, 1839. George Bunsen was, when Gustave Bunsen died, and up to the time of his death, in 1872, a citizen of the state of Illinois. Charlotte Bunsen left George Bunsen and the issue of Carl Bunsen as her heirs at law. The land in controversy was located by a certificate issued to Gustave Bunsen by the state of Texas, as bounty for service in the army of 1835–36, under an act of the legislature of the state of Texas dated February 15, 1858, and a patent thereto issued on the 14th of July, 1876, to "Gustave Bunsen, his heirs or assigns." The defendants have a chain of title to the land from the said George Bunsen and the heirs of Carl Bunsen, and through them claim the same. Augusta Kircher claims it as the wife and survivor of Gustave Bunsen.

The plaintiff in error contends in this court:

(1) That, as the heir of Gustave Bunsen, she ought to recover the entire tract of land in controversy.

(2) That, if she is not the heir of Gustave Bunsen, then that the land having been acquired by Gustave Bunsen during their marriage, it was community property, and the legal title to one-half of same vested in her absolutely, and she ought to have judgment for this one-half, independently of any other issue in the case.

The defendants in error contend:

(1) That Augusta Kircher, the plaintiff herein, was, when Gustave Bunsen died, a citizen of Illinois, and an alien to the republics of Mexico and Texas; hence she could not take the property as the heir of Gustave Bunsen, and hence ought not to recover.

(2) That under the Spanish law in force when Bunsen died, in 1836, the plaintiff was not the heir of Gustave Bunsen, but that his mother and brothers, under whom they hold title, were his heirs, and hence ought they to recover the land.

(3) That the land, under the law then in force, was not the community property of Bunsen and wife, but, if it was, the plaintiff, upon his death, held only an equitable interest in one-half of same, to recover which she must sue on the equity docket of the court, and not the law docket, as herein attempted.

(4) And against the community interest plead .that they were purchasers in good faith, without any notice of plaintiff's equitable title.

A. H. Willie, West & Cochran, and Barnard & McGown, for plaintiff in error.

D. W. Doom, for defendants in error.

Before PARDEE, Circuit Judge, and TOULMIN, District Judge.

PARDEE, Circuit Judge, (after stating the facts.) Conceding that the mother and two brothers of Gustave Bunsen, by reason of their alienage, could not take the land in controversy as heirs of Gustave Bunsen, and that, therefore, said Gustave Bunsen left neither descendants, ascendants, nor collateral relations capable of taking as heirs, could and did the plaintiff in error, the wife of

Gustave Bunsen, inherit and take as heir under the law in force in Texas at the time of said Bunsen's death? The trial judge, in a very elaborate opinion, answered this question in the negative, and gave the following reasons:

"The plaintiff, therefore, was entitled, at Bunsen's death, to one-half of the land in controversy, by virtue of her community right. Did she, or could she under any circumstances, assuming that her husband left neither descendants, ascendants, nor collateral relations capable of taking as heirs, inherit, under the Spanish law then of force, the remaining half of the community, which at his death formed part of Bunsen's separate estate? After giving this question attentive consideration, the conclusion reached by me is that the adjudication of the Texas courts resolve it against the right of the wife to inherit her husband's estate. Under some circumstances she succeeded to the marital fourth. But that feature of the present case may be eliminated, as the claim of plaintiff is not asserted to the fourth 'as a relief against poverty.' She claims the right to take the separate estate of Bunsen (the other one-half of the community remaining at his death) as his heir. In Babb v. Carroll, 21 Tex. 771, the supreme court, speaking through Mr. Justice Hemphill, says: 'L. X. The law (Nov. Rec. 1, tit. 28, lib. 10) declared that where there were no heirs, ascendants, or descendants, the property of the deceased should go to the treasury. There were previous laws which secured the surviving husband or wife in the succession of the deceased under certain contingencies: The law (Nov. Rec. 11, tit. 2, lib. 4) of the Fuero Jurgo, which gave the inheritance to the surviving husband or wife when there were no other relations of the deceased to the seventh degree, and the law (Nov. Rec. 6, tit. 13, p. 6) by which the surviving husband or wife succeeded to the estate, when there were no relations within the tenth degree. But these laws were, by commentators generally, supposed to be impliedly repealed by the law above recited from the Recopilacion, although some were of a different opinion, on the ground that the terms of the law in the Recopilacion were general, and did not refer specifically to the former laws on the rights of surviving husband or wife under those laws. The received opinion of commentators has been held as the rule in Texas, namely, that under the Spanish law the surviving husband or wife under no circumstances succeeded to the whole estate of deceased as his heir, and only to the marital fourth when necessary as a relief against poverty.' In Van Sickle v. Catlett, 75 Tex., at page 409, 13 S. W. 31, the rule announced in Babb v. Carroll is approved in these words: 'At the time William G. Logan died, his wife did not inherit his estate.' Referring to the facts of that case, it will be seen that Logan died in the year 1835.

"But the plaintiff's counsel insist that the rule is otherwise declared by the supreme court of this state in Hill v. McDermot, Dall. Dig. 419, and by the supreme court of Louisiana. A reference to Hill v. McDermot will conclusively demonstrate that a decision of the question was wholly unnecessary in that case, and that the judgment of the court was based altogether on other grounds. Furthermore, the court did not decide it, nor intend to decide it. What is said by the court in that case upon the point is in the nature of a query, with a brief citation from Partidas subjoined, and is embodied in the following extract from the opinion, (page 423:) 'Whether he [referring to the husband] died testate or intestate, or with or without a devisee or heir, was not shown; and whether the witness was or was not mistaken as to knowledge of ownership can alone rest on supposition and conjecture. If Sledge died without an heir of any class under the Spanish law; if, too, no one had obtained administration of the succession,— in the absence of any proof showing that the husband had had the sole right, was not his widow the sole heir and owner, and entitled to sue for restoration? "If no relation exist, [such as might inherit,] and the deceased leave a legitimate wife, she will inherit the whole of his estate; and we say that the husband will inherit from his wife in like circumstances." 2 Partidas, 1101, 1102.'

"A number of decisions of the Louisiana supreme court have been examined; but they appear to be founded upon the Code of that state, and not upon the Spanish law, and hence they can scarcely be said to have application to the present subject to discussion. The opinion of the distinguished jurist, Chief Justice Hemphill, in Babb v. Carroll, with its subsequent approval by the supreme court in 75 Tex. and 13 S. W., should be regarded as decisive of the question by courts sitting in this state. In support of it, however, reference will be made to two additional authorities. In Schmidt's Civil Law of Spain and Mexico (page 259, c. 1, art. 1212) it is said: 'The intestate heirs are (1) descendants; (2) ascendants; (3) collateral; and, wanting all those, (4) the public treasury.' 'When there are no descendants nor ascendants, either legitimate or natural, and no collaterals within the tenth degree, inclusive, the treasury inherits ab intestato.' Id. p. 270, art. 1266. Upon the same point Judge Johnston says: 'In default of descendants, ascendants, and collaterals, the crown or exchequer (la real camara) succeeds to the property of an intestate.' Johns. Civ. Law, marg. p. 121. The plaintiff, therefore, was not an heir of her husband, and did not inherit his estate."

After a careful examination of the authorities cited by the learned judge, and in the light of the very able briefs submitted in this case, we concur in the reasoning and conclusion reached, and the more readily because in Branch v. Manufacturing Co., 6 C. C. A. 92, 56 Fed. 707,—a case where descent was cast March 13, 1838,—this court had occasion to consider and determine the Spanish law of descent in force in Texas prior to the act of the republic of Texas, (December 18, 1837,) in the decision of which case McCormick, circuit judge, delivering the opinion of the court, declared as follows:

"In the first years of the existence of Texas as an independent state, the Spanish law governing testaments and inheritances was in force. By that law, legitimate descendants were necessary or forced heirs to a distinct portion of the estate of decedents. The owner of an estate, if he had legitimate descendants, might, by will, transmit only one-fifth of his estate to persons who were not forced heirs. He could, by his will, transmit to a designated one or ones of his children or grandchildren one-third of the balance of his estate, after deducting the one-fifth mentioned above, and both of these powers of disposition by will could be exercised in favor of a child or grandchild, if the fifth were not, or so far as it was not, disposed of to other uses. As to the residue of the estate, it descended in equal shares to the children, or, through the children, to the later descendants. In default of descendants, the parents, or, in their absence, grandparents, were necessary or forced heirs, to the extent, at least, that only one-third of the estate could be disposed of freely by will. In default of descendants and ascendants, collaterals or persons related by blood inherited, and, in default of descendants, ascendants, and collaterals, the estate went to the public treasury. 1 White, Recop. bk. 2, tits. 3, 4. In certain conditions, not necessary to be here defined, a portion of the estate of a husband or wife went to the surviving spouse, but under no circumstances did the surviving husband or wife succeed to the whole estate of the deceased, as heir. Babb v. Carroll, 21 Tex. 765. Such was the law in force in Texas up to December 18, 1837."

The trial judge having decided that, although the plaintiff in error did not take as heir of Gustave Bunsen, she was entitled, at Bunsen's death, to one-half of the land in controversy by virtue of her community right, the second and remaining question is whether, under the circumstances of the case, the title thus taken was and is such a legal title as will enable her to maintain the pres-

ent action on the law side of the court. The circumstances of the case are that Gustave Bunsen served in the Texas army of independence in the year 1835, up to February —, 1836, when he died; that under the tenth section of the ordinance of December 3, 1835, (Pasch. Dig. art. 4039,) he acquired a right to a bounty of 320 acres of land offered for volunteers in the auxiliary corps for three months' service; that thereafter, on March 14, 1860, a certificate was issued, in accordance with an act of the legislature of the state of Texas dated February, 15, 1858, to Gustave Bunsen, for 960 acres of land, bounty for service in the army 1835–36, and said land was patented to "Gustave Bunsen, his heirs or assigns," July 14, 1876. In relation to this matter the trial judge held as follows:

"The plaintiff acquired a real, beneficial interest in and to one-half of the land in controversy by virtue of her community rights; but the interest and title thus acquired were equitable. The legal title to the land passed by the patent to Gustave Bunsen. This principle is so well established by the more recent decisions of the supreme court of this state that the court will content itself with a mere reference to the authorities. Hill v. Moore, 62 Tex. 610; Edwards v. Brown, 68 Tex. 329, 4 S. W. 380, and 5 S. W. 87; Patty v. Middleton, 82 Tex. 586, 17 S. W. 909. See Rev. St. Tex. art. 3961; 1 Pasch. Dig. art. 4288; Gould v. Wext, 32 Tex. 349.

"In this court, 'where the distinction between legal and equitable proceedings is strictly maintained, and remedies afforded by law and equity are separately pursued,' the action of trespass to try title 'can only be sustained upon the possession by the plaintiff of the legal title.' Gibson v. Chouteau, 13 Wall. 92; Langdon v. Sherwood, 124 U. S. 74, 8 Sup. Ct. 429; Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83; Sheirburn v. De Cordova, 24 How. 423; Johnson v. Christian, 128 U. S. 374, 9 Sup. Ct. 87; Bennett v. Butterworth, 11 How. 669; Bagnell v. Broderick, 13 Pet. 436; Hooper v. Scheimer, 23 How. 235. The plaintiff, having only an equitable title to one-half the land in controversy, and no claim whatever to the remaining half, cannot maintain this suit. Her proper forum is a court of equity."

The authorities cited sustain the correctness of the proposition that the title of the plaintiff in error to the community property is an equitable, and not a legal, title, if the Spanish law in force in Texas in 1836 in regard to the wife's title to community property (for which, see Sayles' Early Law Tex. art. 118, §§ 7, 8; White, New Recop. p. 61 et seq.; Schmidt, Civ. Law Spain and Mexico, arts. 43, 44) was the same as under the present statute of Texas, which has been in force since 1848, (see Pasch. Dig. art. 4642; Rev. St. Tex. art. 2852.)

From the examination we have made, we are inclined to think that, as to the matter in hand, the law of 1848 made no substantial change; but we do not find it necessary to base our decision on that ground. Gustave Bunsen's title, and a fortiori his wife's title, to the land in controversy at the time of Bunsen's death, was, beyond question, an equitable title, and not a legal title. It continued to be an equitable title after the certificate was issued, in 1860, under the act of 1858, and up to the issuance of the patent by the state of Texas in July, 1876. Under the patent, the legal title theretofore vested in the state passed to, and became vested in, the heirs and assigns of Gustave Bunsen; and this, by the express

terms of the instrument, and by force of the act of December 24, 1851, (article 3961, Rev. St.,) which provides:

"That all patents which have heretofore been issued by the authorities of the republic, or the state of Texas, in the names of persons deceased at the time of issuing such patents, and all patents for lands which may be issued hereafter by the authority of the state of Texas and in the names of persons deceased at the time of which such patents may be issued, shall be to all intents and purposes as valid and effectual to convey and secure to the heirs, or assignee as the case may be, of such deceased persons, the land so patented or which may be so patented, as if such deceased person had been in being at the time such patent bears date."

This statute is well known as being intended to prevent a patent for land from being void on account of being made to a grantee dead at the time of the grant, and to place the title in his heirs at law, whoever they may be, or in his assignee in case the grantee named has made an assignment of the land before his death. The plaintiff in error, as has already been shown, is not an heir at law of Gustave Bunsen; no serious contention can be made that she is the assignee of Gustave Bunsen; in short, her relation to the patent actually issued "to Gustave Bunsen, his heirs or assigns" is the same as, and no better than, if the patent had named Carl, George, and Charlotte Bunsen as the grantees.

The judgment of the circuit court was correct, and it is affirmed.