COX et al. v. BRICE et al.

(Circuit Court of Appeals, Fifth Circuit. February 11, 1908.)

No. 1,663.

EVIDENCE—PEDIGREE—DECLARATIONS BY MEMBERS OF FAMILY.

Where, in trespass to try title, plaintiff's claim rested on a grant to the heirs of C., a member of Shackleford's company in Fannin's command, who perished in the massacre of Texas prisoners on March 27, 1836, evidence of declarations of members of plaintiff's family that C. was the son of Z. C. and wife who came from Pendleton district, S. C., to Northern Alabama in the early days, and resided there until 1848, when they removed to Georgia, and thence to Texas where Z. C. died in 1877, and that C. enlisted in Shackleford's company, and was reported to have been killed while with Fannin, was admissible to identify C. as a member of plaintiff's family.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1149–1151.]

In Error to the Circuit Court of the United States for the Eastern District of Texas.

H. M. Whitaker, for plaintiffs in error.

Hal W. Greer and G. P. Dougherty, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. This case is the Texas action of trespass to try title to land described in the pleadings. The land was granted by the government to the heirs of Harvey Cox, who was a member of Shackleford's company in Fannin's command, and perished in the massacre by the Mexicans of the Texas prisoners with Fannin at Goliad on the 27th day of March, 1836. The plaintiffs (including the interveners in the term "plaintiffs") sue for the land claiming that they are the heirs of this Harvey Cox, who, they claim, was a son of Zachariah and Susannah or Susan Cox. The trial court instructed the jury, in part, as follows:

"There is only one question of fact for this jury to determine. You are to determine from the evidence who was the Harvey Cox that fell with Fannin at Goliad. It is immaterial what Harvey Cox it was, unless the plaintiffs' and interveners' proof shows that it was the Harvey Cox, a son of Zachariah and Susan Cox."

The bill of exceptions shows that it was conceded as established that Shackleford's company, of which Harvey Cox was a member, was organized in and came from North Alabama; that plaintiffs and interveners offered testimony tending to show that one Zachariah Cox and his wife, Susannah or Susan, came from Pendleton district, S. C., to North Alabama at a very early day; that they had a large family of children, and that one Harvey Cox was the eldest child; that they

lived in Benton county, Ala., and continued to reside there until about the year 1848, when they removed to Cherokee county, Ga., and from thence, about the beginning of the Civil War, to Wood or Upshur county, Tex., where Zachariah died in 1877 and his wife in 1870. As tending to show the identity of the Harvey Cox, who perished in the Goliad Massacre, with the eldest son of Zachariah Cox and his wife, Susan, they offered an extract from the United States Census Rolls for the year 1840, taken in Benton county, Ala., which showed the name of Zachariah Cox as the head of a family then consisting of 14 white persons, of whom 8 were males and 6 were females, with certain details as to their ages, occupation, etc. The bill of exceptions recites that it appears that the children of Zachariah Cox who testified in this cause by depositions were illiterate and could not write, and signed their depositions by making their marks. The plaintiffs also offered a certified copy of an affidavit made by Zachariah Cox and now on file with the Department of Interior, Bureau of Pensions, at Washington, made on the 26th day of August, 1873, before the clerk of the district court of Upshur county, state of Texas, in which he gives his age as 83 years; his residence, Upshur county, Tex.; and declares that he was married; that his wife's name was Susannah Whitmire; that she is dead; that they were married at Pendleton district on the 16th day of May, 1813; that he served 60 days in the military service of the United States in the War of 1812; that he is the identical Zachariah Cox who was enrolled in Capt. William Cannon's company in Col. Nash's regiment at East Etoh Muster Ground in Pendleton district in the state of South Carolina on the 20th day of January, 1814; that the service he was engaged in was directed against the Creek Indians in the state of Alabama; that his command was not in any actual engagement; that they captured some Indians; that he has received a bounty warrant of 160 acres; does not recollect the number of same nor the date of the act under which same was granted; that he volunteered at East Etoh Muster Ground in Pendleton district in the state of South Carolina on or about the 1st day of January, A. D. 1814. The defendants objected to the introduction of this proof because the contents were irrelevant and immaterial, and because the declarations of Zachariah Cox were self-serving, ex parte, and inter alias acta, hearsay, and not the copy of such an instrument as could be used in evidence; which objections were sustained by the court.

In connection with the evidence just excluded, plaintiffs offered the testimony of Thomas Cox, one of the plaintiffs, who, it was shown, was a son of Zachariah Cox and his wife, Susannah, and who, it appears, was 65 years old at the time of the taking of his deposition in the year 1905; that he was a farmer, residing at Valleyhead, Ala. He testified that he had the following brothers and sisters: Harvey Cox, Carr Cox, Casson Cox, William Cox, Holcomb Cox, A. P. Cox, Cynthia Cox, Judia Cox, and Sallie Cox. He stated that Zachariah and Susan Cox were the father and mother of Harvey Cox and the others above named besides himself. He was then asked if he knew or knew of Harvey Cox, and if he knew what became of the said Harvey Cox. To this he answered as follows:

"Have heard of him; and heard he went to Texas with one Shackleford between the years 1830 and 1840."

He was further asked the following question:

"State whether or not there is any repute among the members of your family accepted as true by you and your uncles and aunts and other members of your family, as to where the Harvey Cox you have testified about lived, and as to whether he is living or dead."

To this the witness answered:

"He lived in and joined Dr. Shackleford's company of North Alabama."

Being further asked the following question:

"Please state whether or not there is any general repute among your uncles and aunts and other members of your family, accepted by you and your uncles and aunts and brothers and sisters, as to whether or not the Harvey Cox mentioned by you in the foregoing interrogatories was a soldier in the Texas Revolutionary War; and if yea, what part did he take in said Revolutionary War, and to whose command did he belong?"

—the witness answered as follows:

"I have been informed that he was in the service of the Revolutionary War in the state of Texas, but don't know what particular part he took. Have heard he was with Fannin."

The witness was further asked the following question:

"If you have stated that it was the general family repute among the members of your family that Harvey Cox lived in the state of Alabama before he came to Texas, then state in what part of Alabama he lived, as near as you can, and state where the father and mother of Harvey Cox were living at the time said Harvey Cox came to Texas, and, if they ever moved from that location, then state the different places they lived after that time, and how long they lived at each place up to the date of their deaths, as near as you can?"

To this question the witness answered as follows:

"Lived not very far from Tennessee river, west of Sand Mountain, in North Alabama, with his father and mother, Zachariah and Susan Cox. Some years after that they moved to one of the Carolinas (i. e., Zachariah Cox and his wife), and later from Carolina to Cherokee county, Georgia, and must have lived there about twenty years previous to their move to Texas during the Civil War."

To the introduction of all of the above answers of the witness the defendants objected on the ground that the witness being 65 years old when testifying was so young that he could not have had any personal knowledge of the matters; that his testimony was therefore hearsay; that it did not appear that he derived his knowledge from any member of the family; that it did not appear at what time he received or acquired the information; that therefore it did not appear that the information was not derived from declarations of persons who were constituting themselves heirs; and therefore it did not appear that the sources of information of the witness were not self-serving declarations—which objections were by the court sustained.

In connection with the foregoing offered and excluded evidence, plaintiffs offered the deposition of Thomas H. Cox, one of the plain-

tiffs, which showed that he was a physician, 47 years old, and resided in Atlanta, Ga.; that he was a son of Carr Cox, who was a son of Zachariah and Susannah Cox; that the said Carr Cox was dead, and had been dead about five years; that the first information he had with reference to his interest in the land in suit as an heir of Harvey Cox arose from inquiries made in answer to a newspaper advertisement appearing about 1901 or 1902, asking for the heirs of Harvey Cox. He was asked:

"State whether or not there is any repute among the members of your family, accepted as true by you and your uncles and aunts and other members of your family as to where the Harvey Cox which you have testified about lived, and as to whether he is living or dead, whether he was married; and if married, whether his wife is living or dead, as to when and where she died, and as to whether or not the said Harvey Cox mentioned by you left surviving him any child or children, and, if you say he did, state their names and whether he or she married; and if married, to whom and when, and where each is living at the present time?"

—to which the witness answered:

"Yes, it is an accepted fact, as a family repute, that Harvey Cox, who was killed in Texas, was my father's brother. The general repute in my family is that Harvey Cox died single and never married. It has been said in my family, and the report is, that Harvey Cox was killed in Texas."

He was further asked:

"Please state whether or not there is any general repute among your uncles and aunts and other members of your family, accepted by you and your uncles and aunts and brothers and sisters, as to whether or not the Harvey Cox mentioned by you in the foregoing interrogatories, was a soldier in the Texas Revolutionary War; and if yea, what part did he take in said war, and to whose command did he belong?"

—to which he answered:

"I do not know, but the repute has been ever since I can remember that Harvey Cox was in the war in Texas, and served in Fannin's command."

He was asked on cross-examination:

"Is it not a fact that you said that Harvey Cox left shortly after the Civil War?"

—to which the witness answered:

"No, I have heard that Harvey Cox was killed in Texas."

The witness, in answer to cross-examination, further stated that his uncle Harvey Cox was killed in Fannin's command in Texas. To all of these direct interrogatories and answers defendants' counsel objected on the ground that the questions were leading in form, and suggested the desired answer from the witness; and on the further ground that on account of the age of the witness it was apparent that he could have no personal knowledge of the matters and things testified to by him, and that therefore his testimony was hearsay; that while it did appear that his information was derived from his father and other members of the family, it did not appear at what time it was acquired, but owing to the age of the witness it must have been acquired at a period when such declarations by his father

would be self-serving, and it did not appear from the witness' testimony that such declarations were not made at a time and by such persons as would make them self-serving declarations on the part of the declarants. Further, that all of said testimony of the witness in relation to where Harvey Cox died, and as to his being in the Texas Revolution, was not pedigree, and, being hearsay, was not within the exception admitting hearsay testimony. Which objections were by the court sustained, and the testimony excluded. The plaintiffs duly saved their exception to this action of the court. There was a verdict and judgment against the plaintiffs. They prosecute this writ.

In Byers Bros. v. Wallace, 87 Tex. 503, 28 S. W. 1056, 29 S. W. 760, the following language is used:

"It is too well settled that hearsay evidence, such as is contained in the declarations proved and those excluded, is admissible to prove pedigree, to admit of discussion or to require authority. The question is, were the statements as to independent facts, such as being a member of the army, presence in Texas, or the time and place of death, admissible under the rule? It is often stated that declarations of the deceased members of a family are not admissible to prove the time nor place of birth, residence, or death. But this rule has been applied in the main to cases in which the poor laws were being administered, and a right was being asserted based upon the residence or birth at a given place. Where the time or place of residence or death is introduced for the purpose of identifying the person in question as a member of a particular family, it is admissible as being closely related to, if not in fact part of, pedigree, that the same rules of law are applicable. * * * If this were a suit against the state to establish the right to the certificate (in some cases it was allowed to heirs to sue for that purpose), then the declarations as to the place of death would not be admissible, for the grant was made for the reason that the deceased fell at that time and place, as a principal cause why the heirs should receive the certificate. The certificate, however, has been granted to the heirs of William Wallace, who fell at Goliad in Capt. Wyatt's company. The right of the heirs of the William Wallace who fell at the time and place named is established, and the question for decision was, which of the claimants, if either, were the heirs or claimed under the heirs of that William Wallace. To connect the deceased soldier with the family of each claimant was the sole object of the evidence. * * * The evidence admitted and that excluded was admissible for the purpose of identifying the deceased as a member of the family. It was so closely connected with the pedigree that it comes within the rule that admits hearsay evidence of this character from the necessity of the case."

Elsewhere in the opinion it is said:

"Family history is nothing but the declaration of different members of a family repeated by so many persons and for such a time as to become common repute in the family. Upon the same subjects the family history and the declarations of a deceased member of a family are equally admissible; the weight to be given to each depends upon the circumstances, and is a question for the jury, not a question of admissibility."

On the authority of Byers Bros. v. Wallace, supra, and of Branch v. Texas Lumber Mfg. Co., 56 Fed. 707, 6 C. C. A. 92, we conclude that the trial court erred in excluding the testimony which we have recited.

There are other questions presented by the assignments of errors, which we have carefully examined, and conclude do not now require

comment from us; and, on the ground above noted, the judgment of the Circuit Court is reversed, and the case remanded, with direction to award the plaintiffs a new trial.