# CHARLESTON.

THACKER COAL & COKE CO. v. NORFOLK & WESTERN RAILWAY CO.

## Decided May 3, 1910.

1.  COMMERCE—*Interstate Commerce—Schedule of Rates—Jurisdiction of State Court.*

    A court of equity of this state has no jurisdiction to enjoin a railroad company engaged in interstate transportation from filing with the Interstate Commerce Commission a schedule of its rates for transportation of coal from a point in this state to a point in another state, on the ground that such rates are unreasonable, unfair and discriminatory.

2.  SAME—*Interstate Commerce—Power of Interstate Commerce Commission.*

    It is the exclusive power of the Interstate Commerce Commission, in the first instance, to pass on the fairness and reasonableness of rates contained in the schedule of rates fixed by an interstate carrier on articles transported in interestate commerce.

Appeal from Circuit Court, Mingo County.

Bill by the Thacker Coal & Coke Company against the Norfolk & Western Railway Company.   Decree for defendant, and plaintiff appeals.

*Affirmed.*

*Vinson & Thompson,* for appellant.

*Holt & Duncan, Joseph I. Doran,* and *Theodore W. Reath,* for appellee.

BRANNON, JUDGE:

The Thacker Coal & Coke Company brought a suit in equity in the circuit court of Mingo county against the Norfolk & Western Railroad Company to enjoin the railroad company from filing with the Interstate Commerce Commission a schedule of rate charges for transportation of coal from the mines of the coal company, in the State of West Virginia, to points on the lakes in the State of Ohio and other states, which schedule increased the rates over those existing, the railroad company alleging that lower rates were accorded to other railroad carriers carrying coal from Pennsylvania and Ohio in competition with West Virginia coal and that the rates proposed by such schedule were discriminatory, unjust and unreasonable, and would entail irreparable injury and probable ruin upon the Thacker Coal Company.   Upon its bill a temporary injunction was granted, and this injunction having been dissolved, the Thacker Coal Company appeals.

The case is one purely of inter-state commerce.   Its solution rests upon that act of Congress known as the Inter-State Commerce Act.   U. S. Compiled Statutes, 1901, vol. 3, p. 3153.   We must follow federal decision upon this act.   We know that the great subject of inter-state commerce has been committed to the power, the vast power, of Congress by that provision of the national constitution declaring that "the Congress shall have power * * * to regulate commerce with foreign nations and among the several states".   Under this grant of power was passed the inter-state commerce act, touching, controlling and regulating, to large extent, and in material respects, commerce passing state lines.   A leading feature of that act, one controlling this case, is, that it establishes a commission of weighty

jurisdiction over inter-state commerce, a jurisdiction to super-
vise, regulate, we may say dictate, inter-state commerce, called
in the act the Inter-State Commerce Commission, and it gives
carriers engaged in such commerce right to fix rates in the
first instance, and requires them to do so, and to print schedules
of such rates, and file the schedules with the Inter-State Com-
merce Commission, and requires the carrier to conform to the
rates fixed in such schedule under severe penalties for over or
discriminative charge.    The act in section 13 gives any one
complaining of anything done or omitted by a carrier to his
injury in contravention of the act right to file a complaint with
the Commission stating the wrong, and provides for notice to
the carrier and a full hearing of the complaint, and section 15
provides that if upon such hearing the Commission shall be
of opinion that the rates demanded or collected, or any act,
regulation or practice by the carrier touching such rates, are
unjust, unreasonable, or unjustly discriminatory, or unduly
preferential or prejudicial, or otherwise in violation of the act,
the Commission shall determine what will be the just or reason-
able rates to be thereafter observed, and what regulation or
practice in respect to transportation is just, fair and reasonable,
to be thereafter followed, and to make an order that the carrier
shall cease and desist from such violation.    (U. S. Compiled
Statutes, Supplement 1907, section 15, amended, p. 900).    As
stated section 13 of the original interstate commerce act gives
a party injured right to complain to the Commission, and
section 14 gives power to investigate and make order in the
premises, and section 16 as amended in 1887 gives power to the
Commission to render judgment that the carrier pay the party
injured damages, and in case of non-payment the party may file
a bill in the United States Circuit Court to enforce the order
or judgment of the Commission.    Compiled Statutes 1901,
Supplement 1907, p. 902.    Section 12 gives the Commission
latitudinous authority to inquire into the business of carriers,
and keep itself informed of their conduct, and demand informa-
tion of the carriers, and commands it to enforce all the pro-
visions of the act, and it is given authority itself to institute
legal proceedings and call upon district attorneys to prosecute
proceedings, under the direction of the attorney-general, for
the enforcement of the act and for punishment for its violation.

In this statement of some of the provisions of this voluminous act, we see that Congress has assumed jurisdiction over inter-state commerce; that it has made ·regulations as to it, particularly as to the matter in hand, rates of transportation; that it has created a tribunal for testing the character and fairness of such rates, with wide powers to judge them, and with power to modify them so as to conform to right and reasonableness.   We see that there is nothing more distinctly . committed to the jurisdiction of this tribunal than the matter of rates, the schedule of rates.   This schedule .must go at once to this Commission, the only authority to deal with it, at least in the first instance, if the act is obeyed.   A tribunal created by Congress under its exclusive power over inter-state commerce, and given a subject matter for its action.   Yet a state court is asked to grant a perpetual injunction to debar a great inter-state railroad from fixing rates and filing them with the Commission.   A state court is asked to say that this schedule shall never reach that Commission.   It does seem to me that the very statement of the proposition is its own refutation.   But · we are not without authority to support this position.   I consider that a decision of the United States Supreme Court, in principle, does so.   *Texas & Pacific Ry. Co.* v. *Abilene Co.,* 204 U. S. 426.   The Abilene Company sued the railroad company for charges claimed to be unreasonable and unjust rates, though they did not exceed the rates specified in a schedule filed with the Inter-State Commerce Commission.   It was held that, such schedule was final until changed by the Commission.   This was so because it rested with the Commission to say, and the schedule was the rule until its action deprived the schedule of force. The court held that, "The Inter-state Commerce Act was intended to afford an effective and comprehensive means of redressing wrongs resulting from unjust discriminations and undue preference, and to that end placed upon carriers the duty of publishing schedules of reasonable and uniform rates; and, consistently with the provisions of that law, a shipper cannot maintain an action at common law in a state court for excessive and unreasonable freight rates exacted on inter-state shipments where the rates charged were those which had been duly fixed by the carrier according to the act and had not been found to be unreasonable by the Inter-state Commerce Commission."   This

Court followed the *Abilene Case* in *Robinson* v. *B. & O. R. Co.,* 64 W. Va. 406. Its principle decides this case.

As will be suggested to the mind at once, and as pointed out in those cases, if such action could be maintained, then a jury and state court would hold one rate to be proper, and the Commission another. Which shall prevail? If the state court's rate, then of what force the act of Congress and the judgment of the Commission under it? The federal power, in a matter which nobody will deny to be within its constitutional jurisdiction, would be nullified. One state one rate, another another, the federal tribunal another, and confusion worse confounded! Just the same may be said in our case. If we stop that schedule on its way, and thus prevent any action on it by the Commission, do we not nullify the act of Congress and render the jurisdiction of the Commission abortive? In *Central Stock Yard Co.* v. *L. & N. R. Co.,* 112 Fed. 823, it is held that a complaining shipper must go to the Commission for relief, as the remedy given by the act through it is exclusive. So in *American Union Coal Co.* v. *Pa. R. Co.,* 159 Fed. 278, and *Great Northern Co.* v. *Kallispell,* 165 Fed. 25. Counsel refer to *Kallispell L. Co.* v. *Great Northern,* 157 Fed. 845. That was not a suit to enjoin the filing of a schedule, but against enforcement of one filed pending a decision by the Commission. The cases *Kiser* v. *Central R. Co.,* 158 Fed. 193, and *Macon* v. *Atlantic R. R.,* 163 Fed. 738, cannot be regarded, as they were circuit court decisions, and contrary to the decision in the same circuit in the Circuit Court of Appeals in *Atlantic Coast Line* v. *Macon Co.,* 166 Fed. 206, above. In *Jewett* v. *Chicago Co.,* 156 Fed. 160, it is held that no injunction lies, as a court cannot pass on a rate in advance of action of the Commission. This denies our right to pass on the rates involved in this case.

Counsel for the coal company say that the *Abilene Case* does not apply in this case, their theory being that that case was to recover damages for unfair rates imposed under *established* rates; that is, to recover for charges as unfair, though rates had been established by a schedule on file with the Commission, and had not yet been condemned by it; whereas, this suit is to prevent the filing of a schedule of unfair rates, to arrest these rates on their way, and thus prevent their establishment. But such injunction would be for the state court to fix rates by

condemning them as unjust; that would be for the state court
to exercise a jurisdiction not vested in it, to pass on rates;
that would be to deny the national tribunal its functions under
the inter-state commerce act.    Judge McCormick in delivering
the opinion in *Atlantic &c. Co.* v. *Macon Grocery Co.,* in Circuit
Court of Appeals, 166 Fed. 217, thought that there would be less
reason, if possible, for entertaining an injunction than an action
to recover back charges.    So I think, and for the reason that
action to recover back is not to prevent establishment of rates,
not stopping the Commission from action; whereas an injunc-
tion would forestall all action by the Commission, and deprive
the public and carrier of the benefit of the schedule.    It would
be a tedious, protracted litigation, a barrier to urgent commerce.
But we are not without authority for the particular question
of this case, that no injunction lies to arrest a carrier from filing
its rate schedule with the Commission.    The case just mentioned
is one wherein the circuit court of appeals held that shippers
cannot maintain a suit in equity to prevent the filing or enforce-
ment of a schedule of rates.    The case of *Columbus Iron & Steel
Co.* v. *Kanawha & Michigan Co.,* 171 Fed. 713, is a case in which
the circuit court of the United States for the southern district
of West Virginia denied a shipper an injunction to prevent a
railroad company from filing with the Commission its schedule
of rates, on the principle that it must first go before that Com-
mission for its action.    I shall only refer to the able and labored
opinion filed in that case by Judge Keller as a strong support
for the position which we hold.    Judge Keller's decree was
affirmed by the Circuit Court of Appeals of the Fourth Circuit,
February 14, 1910.    An advance opinion written by Judge
Prichard is before me in which he approves strongly the follow-
ing conclusion enunciated in Judge Keller's opinion:    "I con-
clude, therefore, that a proper construction of the Act of
February 4, 1887, forbids the exercise of jurisdiction in a case
like the present, because it is inconsistent with the purposes of
that Act as expressed therein, and as construed and expounded
by the Supreme Court of the United States in the leading cases
of *Texas & P. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S.
436; *Southern Ry. Co.* v. *Tift,* 206 U. S. 428."    And Judge
Prichard says:    "This is a clear and concise statement of the
question to be determined.    In other words, is the relief sought

by the appelant compatible with the act to regulate commerce? Does the Inter-state Commerce Act, as it now stands, contemplate that the Inter-state Commerce Commission shall have, primarily, exclusive jurisdiction over matters pertaining to fixing rates and determining as to whether the rates filed by the railroads are fair and just? From an examination of the Inter-state Commerce Act it is apparent that the carrier alone can initiate the proposed rate. A rate thus proposed, after having been filed in the office of the Inter-state Commerce Commission for the term of thirty days, becomes effective, and at that time the Inter-state Commerce Commission assumes complete jurisdiction over the subject matter. It has been repeatedly held that the fixing of rates is a legislative and not a judicial function, and, in this instance, Congress has provided that the carrier shall, in the first instance, establish the rate. In the case of *Southern Pacific Co.* v. *Colorado Fuel & Iron Co.,* 101 Fed. 779, the Circuit Court of Appeals for the Eighth Circuit, passed upon this question. The fourth section of the syllabus in that case reads as follows: 'It is not within the legitimate province of a court of equity, in a controversy between inter-state carriers and shippers, to interpose and fix a maximum freight rate, either upon an independent consideration of what is a reasonable charge or by relation to some other rate then or theretofore in force, and thereupon enjoin the carrier from demanding more than the rate so established, inasmuch as such an order effectually deprives an inter-state carrier of the right to fix its rates in the first instance, and to change the same, which power, as it seems, is conceded to the carrier by the Inter-state Commerce Act.'" The Judge then made an extensive extract from the case of *B & O. R. Co.* v. *United States, ex rel. Pitcairn,* decided by the Supreme Court 10th January, 1910, as supporting the decisions. The Circuit Court of Appeals on the same date in two other cases held the same. *Houston Coal & Coke Co.* v. *N. & W. Ry. Co.,* and *Powhatan Coal & Coke Co.* v. *N. & W. Ry. Co.* I here refer to the *B. & O. R. Co.* v. *U. S. ex rel. Pitcairn Coal Co.,* decided by the Supreme Court of the United States January 10, 1910, holding the same doctrine. Great reliance is placed by counsel for the coal company upon the case of *Southern Ry. Co.* v. *Tift,* 206 U. S. 428. We find in its syllabus that, "Although an action at law for damages to

recover unreasonable railroad rates which have been exacted in accordance with the schedule of rates as filed is forbidden by the Inter-state Commerce Act (*Texas & Pacific Ry. Co.* v. *Abilene Cotton Co.,* 204 U. S. 426), the circuit court may entertain jurisdiction of a bill in equity to restrain the filing or enforcement of a schedule of unreasonable rates or a change to unjust or unreasonable rates." The question presented in this case was not before the court, and the matter contained in that syllabus was not decided, and the proposition is erroneous. The opinion said, after referring to the *Abilene Case,* "We are not required to say however, because an action at law for damages to recover unreasonable rates which have been exacted in accordance with the *schedule of rates as filed* is forbidden by the Inter-state Commerce Act, a suit in equity is also forbidden to prevent a *filing* or *enforcement* of unreasonable rates or a change to unjust or unreasonable rates." That was no express decision, that an injunction would lie to prevent the filing of the schedule. It was not necessary to decide in it the case. It will be seen in Judge Keller's opinion in the *Columbus Coal |Company Case, supra,* that he regards this *Tift Case* as supporting the proposition that an injunction will not lie to arrest the filing of a schedule with the Commission. I so regard the *Tift Case* when properly construed. The force attributed to the *Tift Case* cannot be sustained in view of the comment upon it by the United States Supreme Court in *B. & O. Co.* v. *U. S. ex rel. Pitcairn,* (January 10, 1910), the opinion saying: "Nor is there anything in the contention that the decision in *Southern R. Co.* v. *Tift,* 206 U. S. 428, qualifies the ruling in the *Abilene Case,* and is an authority supporting the right to resort to the courts in advance of the action by the Commission for relief against unreasonable rates or unjust discriminatory practices which, from their nature, primarily require action by the Commission". I would also refer to the case of *Inter-state Commerce Commission* v. *Ill. Central R. Co.,* decided by the United States Supreme Court January 10, 1910, as supporting our position. It is useless to prolong this opinion by further reference to these cases as they are accessible to all.

Brief of counsel relies upon the claim of unlawful combination between the Norfolk & Western Company and other rail-

roads as contrary to the Sherman Anti-trust Law; but we do not think that that act will sustain this injunction bill. It seems that a person injured by a conspiracy contrary to that act may recover damages, but he cannot have an injunction, as that is a remedy to be used only by the government. *Minnesota* v. *Northern Securities Co.,* 194 U. S. 48. This principle will be sustained by *Southern Ind. Express Co.* v. *U. S. Express Co.,* 88 Fed. Rep. 659, affirmed by the Circuit Court of Appeals, 92 Fed. 1022. See also *Gulf C. & S. F. Ry. Co.* v. *Miamie S. S. Co.,* 86 Fed. 407, and *Greer, Mills & Co.* v. *Stoller,* 77 Fed. 1.

Decree affirmed.

*Affirmed.*