(49 South. 202.)

No. 17,561.

PINE TREE LUMBER CO. v. CHICAGO, R. I. & P. RY. CO.

(April 26, 1909.)

Courts (§ 489*) — State Courts — Jurisdiction—Interstate Shipment—Rates—Overpayment.

Where an interstate carrier represents to a shipper that a certain freight rate has been established between given points, and such rate has, in fact, been published, and the shipper sends his goods upon the faith of such representation and publication, and is thereafter coerced into paying a higher rate, a state court has jurisdiction to hear and determine his suit for the recovery of the amount thus overpaid.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 489.*]

(Syllabus by the Court.)

Case Certified from Court of Appeal, Parish of Lincoln.

Action by the Pine Tree Lumber Company against the Chicago, Rock Island & Pacific Railway Company. Case certified from the Court of Appeal for instructions. Instructions given.

Price, Roberts & Warren, for plaintiff. Barksdale & Barksdale, for defendant.

## Statement of the Case.

MONROE, J. The judges of the Court of Appeal for the Second circuit certify to this court for decision the question whether the courts of the state have jurisdiction of the action set forth in plaintiff's petition. The petition referred to reads, in part, as follows:

"To the Honorable the Judge of the Fourth District Court, in and for Lincoln Parish, Louisiana:

"The petition of Pine Tree Lumber Company, Limited, * * *, with respect shows: That on the 7th day of December, 1905, it delivered to the Arkansas Southern Railroad Company, * * * at its Winona station, La., a certain car load of dressed lumber, weighing 47,700 lbs., for transportation to Hanna, I. T.; that, on the application of petitioner for a car, said railway company furnished Mo. P. car No. 31,459 for the transportation of said lumber, and issued to petitioner its bill of lading * * *; that the rate of freight was not named * * *, but, under the terms of said bill of lading and under the law, the rate of freight was governed and fixed by the published classifications and tariff of said railroad company; that said company did not guarantee any specific routing of said shipment, but reserved the right to route the same, and said company was bound to apply and protect the lowest published rate in effect from Winona, La., to Hanna, I. T., * * *; that, under a published tariff at that time in force and effect, issued by said Arkansas Southern Railway Company and its connecting car-

riers, known as I. C. C. No. 1,819 (which said tariff has been subsequently adopted by the C., R. I. & P. Ry. Co. and numbered 21,283), the rate of freight applicable to dressed lumber from Winona, La., to Hanna, I. T., was 23 cents per 100 lbs., applying via Ruston, La., Vicksburg, Shreveport & Pacific Railway, Kansas City Southern Railway, and Ft. Smith & Western Railway; that, a few days prior to this shipment, petitioner's manager called up the traffic office of the Arkansas Southern Railroad Company, at Ruston, La., by telephone, and had quoted the above rate, of 23 cents per cwt., on dressed lumber, to Hanna, I. T.; that at the above rate, which was in force and effect and should have been applied, the total freight charge on said shipment would have been $109.71 * * *; that, instead of protecting the above route, as was its duty to do, the said Arkansas Southern Railroad Company permitted said shipment to be moved via El Dorado, Ark., and the St. Louis, Iron Mountain & Southern Railway; that petitioner was required to pay a charge of $152.66 on delivery of said shipment for transportation, and at Ft. Smith, Ark., before shipment would be moved farther, petitioner was required to pay to the St. Louis, Iron Mountain & Southern Railway Company the additional sum of $136.60, and at Hanna, I. T., before said shipment would be delivered to the consignee, petitioner was required to pay the additional charge of $44.96, making a total sum, which petitioner was forced to pay by reason of said shipment having been misrouted by the fault of the Arkansas Southern Railway Company, of $334.22; and petitioner is entitled to recover the difference between $334.22 and $109.71, the rate which should have been charged, to wit, $224.51. In the alternative, if the court should for any reason determine that the Arkansas Southern Railroad Company was not bound to route the shipment via the cheapest route and protect the rate of 23 cents per cwt., as above alleged, then petitioner avers that the rate applicable to the said shipment of lumber via the route over which it actually did move, viz., El Dorado, Ark., St. Louis, Iron Mountain & Southern Railway, and Ft. Smith & Western Railroad, as shown by published tariffs in force and effect at the time, was 32 cents per 100 pounds, on which basis the amount of freight would have been only $152.64, and, in any event, petitioner is entitled to recover the difference between that amount and the actual amount paid, to wit, $181.58."

It is further alleged that, since the date of the transaction in question, the Arkansas Southern Railroad Company has been merged in the Rock Island, Arkansas & Louisiana Railroad Company, and that the latter company is being operated by the Chicago, Rock Island & Pacific Railway Company

under a contract whereby the company last named has become responsible for its obligations. Petitioner, therefore, prays that both of said last-mentioned companies be cited, and that it have judgment against them in solido for $224.51, with interest, at 5 per cent. per annum from December 7, 1905, until paid.

## Opinion.

The general rule in regard to the exercise of jurisdiction by the state and federal courts is stated by the Supreme Court of the United States as follows:

"A legal or equitable right acquired under the state laws may be prosecuted in the state courts, and also, if the parties reside in different states, in federal courts. So, rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States courts, or in the state courts competent to decide rights of the like character and class, subject to this qualification: That, when a right arises under a law of the United States, Congress may, if it see fit, give to the federal courts exclusive jurisdiction. This jurisdiction is sometimes exclusive by express enactment, and sometimes by implication. If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court." Claflin v. Houseman, 93 U. S. 136, 137, 23 L. Ed. 833.

The jurisdiction conferred on the courts of the United States in regard to matters affected or intended to be affected by the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), is not exclusive by express enactment. To the contrary, the act itself (section 22) reads:

"And nothing in this act contained shall, in any way, abridge or alter the remedies now existing at common law, or by statute, but the provisions of this act are in addition to such remedies."

It was found, nevertheless, that to hold in all cases intended to be reached, and in which common-law or statutory remedies existed, that such remedies continued to be

available, would tend to render the act nugatory, and the courts have therefore ruled, in certain cases in which the main purpose of the act was involved and where such purpose would otherwise have been defeated, that the pre-existing common-law and statutory remedies have been superseded, and, in effect, that exclusive jurisdiction has been vested by implication in the Interstate Commerce Commission and in the courts of the United States for the enforcement of the remedies provided by the interstate commerce act. Some of the federal courts, in attempting to deal with the situation, have held, in cases in which the consensus of authority appears to be against them, that no common-law remedies exist. Others, dealing with similar cases, have held that such remedies do exist. And the Supreme Court has disposed of the matter by holding that the interstate commerce act should not be so interpreted as to make it self-destructive, and that, where to recognize the continued existence of a pre-existing common-law or statutory remedy would produce that result, such recognition cannot be accorded. This ruling, however, as we understand it, is predicated upon the obligation, resting upon all courts, to so construe laws, where it is possible to do so, as to make them effective, and is not to be extended in its application beyond the necessities of the situation, or so as to strike with absolute nullity so important a provision of the law which the court has interpreted as section 22, which has been quoted. The case in which the ruling thus referred to was made is that of Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, and the question presented was, whether a state court had jurisdiction to decree that a freight rate, established in accordance with the interstate commerce law, was unreasonable. The Supreme Court, through Mr. Justice White, said:

"Without going into detail, it may not be doubted that at common law, where a carrier refused to receive goods offered for carriage except upon the payment of an unreasonable sum, the shipper had a right of action in damages. It is also beyond controversy that, when a carrier accepted goods without payment of the cost of carriage or an agreement as to the price to be made, and made an unreasonable exaction as to the delivery of the goods, an action could be maintained to recover the overcharge. * * * As the right to recover, which the court below sustained, was clearly within the principle just stated, and as it is conceded that the act to regulate commerce did not, in so many words, abrogate such right, it follows that the contention that the right was taken away by the act to regulate commerce rests upon the proposition that such result was accomplished by implication. In testing the correctness of this proposition, we concede that we must be guided by the principle that repeals by implication are not favored, and, indeed, that a statute will not be construed as taking away a common-law right, existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would, in effect, deprive the subsequent statute of its efficacy—in other words, render its provisions nugatory."

The court then proceeds to give a résumé of the purposes and provisions of the interstate commerce law, to show that those purposes would be utterly defeated if the power to determine whether freight rates are reasonable or unreasonable were lodged at once in the Interstate Commerce Commission and in the courts and juries of the country, generally, and to hold that, whether the question be raised before the rate has been established or afterwards, the shipper has no right of appeal to the courts, whether state or federal, until the commission has acted, or has been afforded the opportunity of acting, in the matter. Referring to the section 22, the court said:

"This clause, however, cannot, in reason, be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself. The clause is concerned, alone, with rights recognized in or duties imposed by the act, and the manifest purpose of the provision was to make plain the intention that any specific remedy given by the act should be regarded as cumulative, when oth-

er appropriate common-law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act."

Returning to the case which is here presented, we find that plaintiff alleges, in effect, that defendant represented to it, and published to the world, that it was charging a certain rate on dressed lumber, shipped from Winona, La., to Hanna, Ind. T.; that, relying on such representations and publications, plaintiff shipped a car load of dressed lumber from the place first named, consigned to the other, for which, if defendant's representations had been made good, it should have been charged at the represented rate, but that the representations were not made good, and it was compelled to pay at a much higher rate; and it asks that defendant be condemned to refund the difference between the amount that should have been paid and the amount actually paid under compulsion. It will be observed that there is no complaint that the alleged established rate was unreasonable, or that plaintiff contracted upon any other basis than that of the rate so established. Plaintiff's case is concisely stated by its counsel as follows: 

"The railway company, so far as we know, complied with the requirements of the interstate commerce law in the fixing and publication of their rates, and, having made a contract with the shipper that is entirely unlawful, is bound, under its contractual relation with the shipper, to live up to its published rates. We care not whether their failure to do so is a violation of the interstate commerce law or not. We are not asking for penalties or damages accorded by the federal statute. Our action is based on the Civil Code, art. 2301: 'He who receives what is not due him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.' "

Assuming it to be true, then, that a contract resulted between the parties whereby defendant became bound to carry plaintiff's freight at a certain lawful rate, and that plaintiff was thereafter coerced into paying more, we can discover nothing in the interstate commerce law, or in any authoritative jurisprudence by which that law has been interpreted, to prevent a state court from entertaining jurisdiction of a suit for the recovery of the amount overpaid, any more than if the overpayment had been inadvertent, and we, therefore, answer our learned Brethren of the Court of Appeal that the state courts have power and authority to hear and determine plaintiff's complaint.