## SIBLEY, L. B. & S. RY. CO. v. BRASWELL SAND & GRAVEL CO.

### No. 6138.

Court of Appeal of Louisiana. Second Circuit.

Nov. 1, 1940.

Rehearing Denied Nov. 29, 1940.

Writ of Review Denied Jan. 6, 1941.

W. T. Drew, of Minden, for appellant.

F. D. Culbertson, Jr., of Minden, for appellee.

HAMITER, Judge.

The Braswell Sand & Gravel Company, while operating a gravel pit near the village of Yellow Pine in Webster Parish, Louisiana, used the facilities of plaintiff, Sibley, Lake Bisteneau & Southern Railroad Company, in shipping large quantities of gravel and sand; and the latter alleges and urges, in this suit instituted against said operator, a claim for unpaid accrued demurrage of $463.60.

The defense to the action, which will be discussed in detail hereinafter, is outlined in a plea to the jurisdiction ratione materiae, a plea of estoppel and an answer. In addition to these pleadings, defendant filed a reconventional demand.

Evidence was adduced in connection with all issues formed; and the district court overruled the jurisdiction and estoppel pleas, rejected the reconventional demand and awarded judgment in favor of the plaintiff for the amount claimed.

On this appeal, which defendant is prosecuting, the reconventional demand is not urged. Therefore, it is treated as having been abandoned.

■ Demurrage, such as is herein claimed, "is a charge by a carrier for the detention of cars beyond a reasonable time, for the purpose of compensating the carrier and of securing a prompt release of cars." 13 C.J.S., verbo Carriers, § 334.

The business of the plaintiff railroad company, a relatively small enterprise, is that of a common carrier engaged in interstate commerce. Only one locomotive is regularly employed by it, although another is maintained for emergency purposes; and its operations are carried on over tracks that run from Hall Summit, Louisiana, through Yellow Pine to Sibley, Louisiana, in which last-named town they connect with trackage of the L. & A. and the Y. & M. V. Railroad Companies. No fixed schedule is maintained, although triweekly service is usually furnished its patrons.

Applicable to plaintiff's business is the duly published freight tariff No. 4–P that was filed by the Association of American Railroads with, and approved by, the Interstate Commerce Commission and became effective December 1, 1935. This tariff provides and names the car demurrage rules and charges and also the storage rules and charges that apply at all points on affected railroads, including plaintiff's. Thereunder, two methods for computing demurrage are authorized, one being under the straight demurrage regulation, and the other in accordance with an announced Average Agreement Rule.

On July 8, 1936, plaintiff and defendant contracted in writing that the Average Agreement Rule would govern in computing all demurrage charges growing out of their relationship of carrier and shipper, both of the mentioned rules being then familiar to the officials of defendant company. The latter, at that time, had knowledge that the plaintiff railroad company had no fixed schedule and did not provide a 24 hour service.

For and during a long period following July 8, 1936, plaintiff delivered empty cars to defendant on a spur track running from the main line to the plant, and hauled the loaded cars pursuant to instructions.

Ultimately this suit was filed. In the petition, plaintiff alleges the execution of the written contract of the parties to abide by the Average Agreement Rule, and further alleges that the demurrage resulting from the stated relationship and charged, or

$463.60, was computed in accordance therewith.

This rule gives the shipper a period of 48 hours of free time for loading a car after its delivery. For each car released within the first 24 hours of the free time, one credit is allowed. After the expiration of said 48 hours, one debit per day, or fraction of a day, is charged. At the end of each calendar month the total number of credits is deducted from the total number of debits, and $2 per debit is charged for the remainder. If the credits equal or exceed the debits, no charge is made. There is no payment by the carrier for excess of credits; and credits in excess of the debits of any one month cannot be considered in computing the average detention for another month.

In opposing plaintiff's demand, defendant offers the primary contention, urged on the merits and under its formal plea, that the state court is without jurisdiction of the action. It submits that the demurrage charged was computed by an arbitrary rule adopted by the railroad company, the reasonableness of which only the Interstate Commerce Commission has authority to determine, and was not figured in accordance with the Average Agreement method. The contention, we think, is without merit; and the plea to the jurisdiction was correctly overruled.

In 11 American Jurisprudence, verbo Commerce, § 156, it is stated: "It has been broadly asserted that the jurisdiction of the Federal courts over causes arising under the Interstate Commerce Act is exclusive and that no action in the state courts may be maintained thereon. This statement should be accepted in a somewhat qualified sense, however. It is expressly provided by statute that 'nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.' In view of this provision, it is held that the Interstate Commerce Act does not supersede the jurisdiction of the state courts in any case, new or old, where the decision does not involve the determination of the administrative power and discretion of the Interstate Commerce Commission or relate to a subject as to which the jurisdiction of the Federal courts has otherwise been made exclusive."

Assistance in determining the issue under consideration is also given by the case of Pennsylvania Railroad Company v. Puritan

Coal Mining Company, 237 U.S. 121, 35 S. Ct. 484, 487, 59 L.Ed. 867. Although the factual situation there is not identical with that in the instant case, the language used and doctrine announced in the opinion are pertinent. A shipper, in that action, sued an interstate carrier in a state court to recover damages caused by the latter's failure to furnish cars for transporting coal, and charged unjust discrimination. The carrier, among other things, pleaded lack of jurisdiction of the state court. In disposing of this plea the court said:

"There are several decisions, already cited, which hold that suits against railroads for unjust discrimination in interstate commerce can only be brought in Federal courts. But it must be borne in mind that there are two forms of discrimination,—one in the rule and one in the manner of its enforcement; one in promulgating a discriminatory rule, the other in the unfair enforcement of a reasonable rule. In a suit where the rule of practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the Commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust, no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. When the Commission has declared the rule to be unjust, redress must be sought before the Commission or in the United States courts of competent jurisdiction, as provided in § 9 [49 U.S.C.A. § 9].

"But if the carrier's rule, fair on its face, has been unequally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or Federal courts."

This doctrine was later applied and reaffirmed in Pennsylvania Railroad Company v. Sonman Shaft Coal Company, 242 U.S. 120, 37 S.Ct. 46, 61 L.Ed. 188.

Both of the mentioned U. S. Supreme Court decisions were cited and discussed in

Wilson et al. v. Long Island Railroad Company, 178 App.Div. 799, 165 N.Y.S. 913. The Appellate Division of the Supreme Court of New York held in that case, as shown by the syllabus which accurately reflects the holdings, that: "In an action against a railroad to recover demurrage charges on interstate carload freight, where plaintiff did not assail the reasonableness of defendant's freight tariff rule under which the demurrage was charged, but recovery was sought and obtained on the contention that defendant failed to comply with its own rule, the state court had jurisdiction of the action before investigation and determination by the Interstate Commerce Commission as to the validity of the charges."

It was held in the case of Pine Tree Lumber Company v. Chicago, R. I. & P. Railroad Company, 123 La. 583, 49 So. 202, as the syllabus thereof shows, that: "Where an interstate carrier represents to a shipper that a certain freight rate has been established between given points, and such rate has, in fact, been published, and the shipper sends his goods upon the faith of such representation and publication, and is thereafter coerced into paying a higher rate, a state court has jurisdiction to hear and determine his suit for the recovery of the amount thus overpaid."

The court observes, in the opinion of such case, that there was no complaint that the alleged established rate was unreasonable, or that the shipper contracted upon any other basis than that of the rate so established.

It is said in the annotations on page 343 of 64 A.L.R., following the published report of the opinion in Thomas v. Chicago, Burlington & Quincy Railroad Company, 127 Kan. 326, 273 P. 451, 64 A.L.R. 322, that the generally accepted view is: "Where the reasonableness of the rate is not assailed, and no question affecting the power or administrative policy of the Interstate Commerce Commission is involved, and the controversy merely involves the question whether the carrier has exacted a rate in excess of that prescribed in its own published schedules, the state court has jurisdiction."

In the instant case, defendant does not question the reasonableness of the Average Agreement Rule that has the approval of the Interstate Commerce Commission, and which the parties have contracted to follow in determining demurrage

charges; hence, we are not asked to pass upon any legislative, administrative, or discretionary function of that approving body. It merely complains that plaintiff has not complied with the provisions of that rule, but has computed the demurrage in some unauthorized and illegal manner. Under this complaint there is to be determined only the question of fact of what is the correct demurrage charge according to the rule agreed on. This issue may be the subject of a state court's consideration, as pointed out in the above-discussed authorities.

As plaintiff did not service its patrons daily, but usually operated on a tri-weekly basis, a strict compliance with the Average Agreement Rule was impossible; however, it did, according to our appreciation of the record, follow the provisions of the agreement as closely as possible. Of necessity, all cars required for loading during a two-day period were delivered on defendant's spur track at one time. The 48 hours of free time on each of them, to which the shipper was entitled, were recorded on the books of plaintiff as beginning at 7 A. M., following delivery; and at the expiration of those 48 hours it commenced the demurrage charges. Some of the cars were loaded and released within the first 24 hours of the free time, and when this occurred proper credits were listed. At the end of each calendar month, plaintiff deducted the recorded credits from the debits shown. Also, and at the same time, it made further deductions of one debit per car on 50 per cent. of those drawing demurrage; this allowance being made to offset charges made on the cars ordered for delivery on a second day, but previously delivered, which usually were equal in number to those requested for the first day's loading.

Defendant's operations were neither inconvenienced nor prejudiced through the delivery at one time of all cars required for two days' loading. The spur track leading to the gravel pit was of sufficient length to accommodate them. Furthermore, it declined somewhat, and as an empty car was needed the brakes thereof were released and it rolled into proper position.

The evidence further significantly shows that defendant received monthly statements, except in one or two instances, on the demurrage charges; and whenever the correctness of a charge was questioned, an immediate adjustment was effected between representatives of the parties.

It may be stated, therefore, that a substantial compliance with the Average Agreement Rule was had, and that the amount charged as demurrage cannot be decreed by us to be incorrect.

The plea of estoppel is untenable. Thereunder defendant contends that plaintiff could not comply with the Average Agreement Rule as the latter maintained no daily schedule of operation. In the first place it does not appear that such a schedule was a prerequisite to the applicability of that rule; and secondly, the evidence discloses that defendant at the time of the execution of the written contract had full knowledge of the service that plaintiff rendered.

The judgment of the district court is, in our opinion, correct; and it is affirmed.

DREW, J., recused.