# CHARLESTON

## ROBINSON *v.* BALTIMORE & OHIO R. Co.

Submitted June 12, 1908.   Decided October 6, 1908.

1.  COMMON CARRIER—*Schedule of Rates—Common Law Action—When Maintainable.*

    Until a schedule of rates filed and published by a common carrier, pursuant to the act of Congress entitled "An Act to Regulate Commerce," has been by the Interstate Commerce Commission declared excessive and unreasonable, a shipper cannot maintain an action at common law in a state court to recover for the excess of freights exacted on interstate shipments, if the rates charged were those fixed by such schedule.   (p. 408.)

2.  SAME—*Common Law Action—Prior Adjudication.*

    On the trial of such a common law action, the rates charged being according to such schedule, nothing but the evidence of a prior adjudication of the Interstate Commerce Commission that such rates are unreasonable and unjust will justify a judgment for plaintiff.   (p. 409.)

3.  INTERSTATE COMMERCE COMMISSION—*Prior Adjudication—Judicial Notice.*

    The court on such trial will not take judicial notice of such prior adjudication by the Interstate Commerce Commission, but if relied on by the plaintiff, the same must be proven by the record thereof.   (p. 410.)

4.  FEDERAL COURT'S, JURISDICTION—*State Court's Jurisdiction,*

    While the federal courts have exclusive jurisdiction of all actions based on specific remedies given by the said act of Congress, as under sections 8 and 9 thereof, nevertheless, after such adjudication by the Interstate Commerce Commission a state court has jurisdiction of a suit at common law brought against the carrier to recover the excess of freights paid on interstate shipments, such right of action being preserved to the shipper by section 22 of said act.   (p. 411.)

Error to Circuit Court, Marion County.

Clarence D. Robinson brought an action of *assumpsit* against the Baltimore and Ohio Railroad. Judgment for defendant and plaintiff brings error.

*Affirmed.*

C. H. LEEDS, for plaintiff in error.

U. N. ARNETT; JR. and JOHN BASSEL, for defendant in error.

Miller, Judge:

The plaintiff sued the defendant in an action of *assumpsit* to recover $150.00, the aggregate of certain alleged over-charges of freight on interstate shipments of coal loaded from wagons at Fairmont, West Virginia, and consigned to various persons without the State. The case was tried by the court in lieu of a jury, upon an agreed state of facts, and the finding and judgment of the court thereon being for the defendant, the plaintiff has brought the case here upon a writ of error.

It is agreed that the rate charged the plaintiff was in ac-cordance with an amended schedule, effective January 26, 1903, providing that certain tariffs should apply only to coal loaded from regular tipples, and that on coal loaded from wagons there should be an additional charge of 50 cents per ton, to be deducted before pro rating with connecting lines, and added to the defendant's proportion. It is agreed that this differential in rates on interstate shipments of coal loaded from wagons into cars of the defendant was binding on ship-pers and carrier alike, and that said amended schedule had been regularly published and filed by the defendant with the Interstate Commerce Commission.

There is nothing in the agreement of facts and nothing appears in the record to show that this tariff schedule had at any time prior to the institution of this suit been changed or modified in any of the methods or ways provided by the act of Congress of February 4, 1887, and the several acts amen-datory thereof, entitled "An Act to Regulate Commerce," 3 U. S. Comp. Stat. 3150.

To reverse the judgment below plaintiff relies upon the fol-lowing propositions: First, that the differential of 50 cents per ton on coal loaded from wagons, was an unjust and illegal discrimination against him, for which a common law action ac-crued to him to recover back the excess of freights paid. Sec-ond, that such discrimination between rates on coal loaded from tipples and coal loaded from wagons being admitted, the bur-den was cast upon the defendant to show by competent evi-dence justification for the excessive rate, and no such justifi-cation being shown a *prima facie* case was made entitling him to judgment. Third, that inasmuch as it is claimed the Interstate Commerce Commission, in the case of the *Glade*

*Coal Company* v. *Baltimore & Ohio Railroad Company*, 10
I. C. C. Rep. 224, April, 1904, adjudged the additional charge
of 50 cents per ton unreasonable and unjust to the fullest ex-
tent and should be abolished, we may judicially know the
judgment of the Commission in that case without other proof
thereof, and give judgment here accordingly.

With respect to the first proposition it is undoubtedly true
that at common law an action does accrue in favor of a ship-
per against a common carrier, to recover back excessive
charges of freight. Such right is as old as the common law
itself, and until Congress has acted it is as applicable to interstate
state and foreign as to local shipments. *Western Un., Tel.
Co. v. Call Pub. Co.*, 181 U. S. 92. It is argued, moreover,
that this common law remedy has been preserved by section
22 of the Interstate Commerce Act, providing that "nothing
in this act contained shall in any way abridge or alter the
remedies now existing, at common law or by statute, but the
provisions of this act are in addition to such remedies." The
Supreme Court of the United States in the more recent case
of *Texas & Pac. Ry. Co.* v. *Abiline Cotton Oil Co.*, 204 U.
S. 426, not referred to by counsel, has given construction to
this provision; and, as we believe, to all other provisions of
said act applicable to the case now before us. The action
there, as in this case, was to recover back alleged excessive
freights charged on interstate shipments. After discussing
various provisions of said act and the general scope and pur-
pose thereof, and the jurisdiction of the Interstate Commerce
Commission with respect thereto, which need not be repeated
here, it was determined, according to the fourth point of the
syllabus, that "The Interstate Commerce Act was intended
to afford an effective and comprehensive means for redressing
wrongs resulting from unjust discriminations and undue pre-
ference, and to that end placed upon carriers the duty of
publishing schedules at reasonable and uniform rates; and
consistently with the provisions of that law, a shipper cannot
maintain an action at common law in a state court for exces-
sive and unreasonable freight rates exacted on inter-
state shipments where the rates charged were those which had
been duly fixed by the carrier, according to the act and had
not been found to be unreasonable by the Interstate Com-
merce Commission." All of the shipments involved in this

case, according to the agreement of facts, were made in February, March and May, 1903, nearly a year before the decision of the Glade Coal Company case, and when, so far as we know, there had been no adjudication against the rate of the schedule by the Interstate Commerce Commission, and when it was not only the right but the legal duty of the defendant to have charged and collected freights in accordance therewith.  It is clearly demonstrated in the opinion of the Court in *Railway Co.* v. *Oil Co.*,, *supra*, that if said section 22 should be construed as preserving to shippers this common law remedy in advance of a decision of the question of the justness and reasonableness of the rates prescribed thereby; then different courts having jurisdiction might establish by different decisions as many different rates, thereby defeating the very purpose of the act of Congress to establish and maintain uniform rates.  At page 442 the Court says:  "In other words, we think that it inevitably follows from the context of the act, that the independent right of an individual originally to maintain actions in courts to obtain pecuniary redress for violations of the act conferred by the ninth section, must be confined to redress of such wrongs as can, consistently with the context, be redressed by courts without previous action by the Commission and, therefore, does not imply the power in a court to primarily hear complaints concerning wrongs of the character of the one here complained of."  To the argument that the construction there given the statute would result in great harm, the Court says:  "This is only an argument of inconvenience which assails the wisdom of the Legislation or its efficiency and affords no justification for so interpreting the statute as to destroy it."

Bound by this decision of the Supreme Court of the United States, we hold that until a schedule of rates, once filed and published by the carrier, according to the act of Congress, has been by the Interstate Commerce Commission declared excessive and unreasonable, a shipper cannot maintain an action at common law in a state court to recover the excess of unjust and unreasonable freights exacted on interstate shipments where the rates charged were those fixed by such schedule.

With respect to the second proposition, we find that in one case at least it was determined by the Interstate Commerce

Commission in a proceeding before it, that the burden of showing discrimination is on the plaintiff, and then upon the carrier to show that the discrimination was justified. *Richmond Elevator Co.* v. *Pere Marquette Railroad Co.*, 10 I. C. C. Rep. 629. A different rule was applied, however, in *Western Union Tel. Co.* v. *Call Pub. Co.*, *supra*, but these rules have little application here, where, as we have seen, it has been determined that no such action can be maintained by an interstate shipper in advance of an adjudication by said Commission.

The third proposition presents the only difficult question in the case. In the case of *Railway Co.* v. *Oil Co.*, *supra*, at page 446, the Court says: "When the Commission is called upon on the complaint of an individual to consider the reasonableness of an established rate, its power is invoked not merely to authorize a departure from such rate in favor of the complainant alone, but to exert the authority conferred upon it by the act, if the complaint is found to be just to compel the establishment of a new schedule of rates applicable to all." The decision of the Commission, therefore, in the Glade Coal Company case, abolishing the differential of 50 cents per ton, was, in effect, declaring the same unreasonable and unjust from the beginning, enuring to the benefit of all shippers of interstate commerce, and giving them right of action thereafter to recover the excess of freights paid. The court below, as would seem from the opinion of the learned Judge, disposed of the case upon the ground of lack of evidence by the plaintiff of the injustice and unfairness of the discrimination; and that, having failed on his proof, the burden being his, he was not entitled to judgment. Whatever may be the correct rule of evidence generally in the trial of common law actions of this character, it is now quite clear, from the opinion in *Railway Co.* v. *Oil Co.*, *supra*, that the only evidence available in the trial of actions to recover back the excess of freights on interstate shipments, the rates charged being according to the published schedule, nothing but the evidence of the prior adverse adjudication of the Interstate Commerce Commission will justify a judgment for plaintiff. The plaintiff offered no such record. Should the court below then, as we are asked to do here, have taken judicial notice of the judgment of the Inter-

state Commerce Commission in the Glade Coal Company case? We do not think so, nor can we do so here on review. Courts do not ordinarily take judicial notice of their records and proceedings in other causes, and there are few, if any, instances in which they will take judicial notice, except as precedents, of the decisions and proceedings in other courts in other causes. 1 Elliott on Ev., section 58; *Ballard* v. *Thompson*, 19 Grat. 14. It is true, of course, as of the public statutes of another state, that the courts of one state, the record thereof being produced, will take judicial notice of the legal effect of a judgment or decree of a court of another state. *Shriver* v. *Shriver*, 30 W. Va. 456,475. The plaintiff, therefore, must fail for want of legal proof of the prior adjudication by the Interstate Commerce Commission.

Another ground of defense is that the court below had no jurisdiction of the subject of the action, federal jurisdiction thereof being exclusive. We think this position would be correct if the action was based on any specific remedy given by the act of Congress, as under sections 8 and 9 thereof. *Van Patton* v. *Chicago M. & St. P. R. Co.*, 74 T. R. 981. But this action is not based on any right given by the federal statute, but on the common law right, of which a state court does have jurisdiction, a right, we think, reserved to the shipper by section 22 of said act.

*Affirmed.*