(86 Misc. Rep. 337)

UNITED STATES NICKEL CO. v. BARRETT.

(City Court of New York, Trial Term.   June 27, 1914.)

1. COMMERCE (§ 89*)—INTERSTATE COMMERCE—JURISDICTION OF COURTS.

Where an express company, having obtained possession of an order from an owner of goods for their delivery to another express company, altered the order, and by means thereof obtained the goods without authority from the owner, and transported them to the owner in another state, an action to recover the express charges paid by the owner under protest could be maintained in a state court, and the owner was not required to seek relief from the Interstate Commerce Commission or the federal courts, under Interstate Commerce Act (Act Feb. 4, 1887, c. 104) § 8, 24 Stat. 382 (U. S. Comp. St. 1901, p. 3159), providing that if any carrier subject thereto shall do or cause or permit to be done anything thereby prohibited, or omit to do anything thereby required, it shall be liable to the person injured thereby, and section 9, providing that any person claiming to be damaged by any carrier subject thereto may make complaint to the Commission, or bring suit in any District or Circuit Court of the United States of competent jurisdiction, since no relation of shipper and carrier existed, no federal question was involved, and plaintiff's claim was not based on anything prohibited or declared unlawful by that statute, but on an act which would be unlawful entirely independent of the statute.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 89.*]

2. PAYMENT (§ 87*)—RECOVERY BACK—INVOLUNTARY PAYMENT.

To constitute a voluntary payment, the party paying must have had the freedom of exercising his will and have acted without compulsion, and where a party has in his possession property of another, which he refuses to deliver unless paid a sum of money, which he has no right to receive, the payment so made by the owner to obtain possession is made by compulsion and may be recovered back.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 283–287; Dec. Dig. § 87.*]

Action by the United States Nickel Company against William M. Barrett, as president of the Adams Express Company. Verdict for plaintiff, and defendant moves for a new trial. Motion denied.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ivins, Wolff & Hoguet, of New York City (Robert Louis Hoguet, of New York City, of counsel), for plaintiff.
Edward V. Conwell, of New York City, for defendant.

FINELITE, J. The jury having awarded plaintiff a verdict for the sum of $513.50, the amount claimed by the plaintiff, which was paid upon demand to the defendant under protest, defendant thereupon moved to set aside the verdict and for a new trial, for the reason that the court was without jurisdiction of the subject-matter involved herein. This motion was entertained by the court, and it was agreed between the respective counsel and the court that this should be the only question to be decided by the court, upon the sole point: Has the City Court of the City of New York jurisdiction of the case, moneys being paid to a railroad company as a carrier of merchandise, without authority or consent of the owner of the property, and charging therefor a certain rate for the carriage of said merchandise, the same being paid under protest? Can the defendant, as such railroad company, refund the money paid as charges for interstate transportation without the question in the first instance being submitted to the Interstate Commerce Commission, under the act to regulate commerce?

[1] It appears from the facts here that the plaintiff had shipped from a port in France to the port of New York 159 barrels of nickel matte, and that J. W. Masters & Co. were plaintiff's customhouse brokers, who made the necessary entry of said goods, and had written a delivery order on the delivery clerk of the steamship Rochambeau, the steamer upon which said matte arrived, said delivery order specifically directing the clerk of the steamer Rochambeau to deliver the goods in question to the American Express Company of New York. The delivery order was handed to a boy in the employ of the customhouse brokers, with instructions to take it to the American Express Company. Accompanying it was a letter, addressed to the American Express Company, stating that inclosed therewith would be found the delivery order previously mentioned. The boy thereupon went to the American Express Company, and by direction was sent next door, and he thereupon entered the Adams Express Company's office, and the order and the letter inclosing it were delivered to the Adams Express Company in the person of one of its agents, and the order, while in the possession of the Adams Express Company, was altered by some one in its employ by striking out the word "American" and substituting the word "Adams," and on the strength of said alteration the Adams Express Company obtained possession of the goods from the maritime carrier and transported it by express to the station of the Pennsylvania Railroad at New Brunswick, in the state of New Jersey. The plaintiff was then informed that the goods would not be surrendered to it except upon payment of the sum of $513.50 freight charges, which money was paid involuntarily, under protest, and solely to secure the release of the merchandise from the alleged lien of the defendant, the validity of which was denied.

The defendant produced the employé who had opened the envelope

and found the order contained therein for said merchandise upon the delivery clerk of the steamer Rochambeau. No evidence was adduced upon the trial by the defendant showing that the act of the messenger boy who was sent from the customhouse brokers to the American Express Company's offices with the said order for said merchandise, the same being obtained by the defendant, was in any manner ratified by the plaintiff. Evidence was adduced by the plaintiff, by the customhouse brokers who received the order from the plaintiff, for the American Express Company, for the carriage of said merchandise from the steamer to the place of destination, to wit, New Brunswick, New Jersey, that when the letter containing the order for the delivery of the merchandise to the American Express Company was given to the messenger, he was in no manner authorized to deliver it to any other person than to whom it was addressed.

The only question to be passed upon is "has this court jurisdiction of the subject-matter involved herein?" The defendant contends by its answer, as a defense to the cause of action herein, and alleges that the said express company now is, and at all the times hereinafter mentioned was, a common carrier engaged in the transportation of property for hire over its own route or over its own route in connection with the routes of other carriers between the points hereinafter mentioned and between other points in various states of the United States; that as such common carrier it was at all the times hereinafter mentioned, and now is, subject to the provisions of an act of Congress entitled "An act to regulate commerce," approved February 4, 1887, and the various acts amendatory thereof and supplemental thereto; and that by such act it was at all the times hereinafter mentioned, and now is, charged with the duty of establishing and filing with the Interstate Commerce Commission and keeping open to public inspection in its various offices schedules of its rates and charges for the transportation of property between different points on its own route and between points on its own route and points on the routes of other carriers; and further alleges that on the 10th day of October, 1912, said express company had duly established and filed, as required by law, schedules of its rates and charges for the transportation of property between the city of New York, in the state of New York, and New Brunswick, in the state of New Jersey, which said schedules were, on and prior to the said 10th day of October, 1912, open to public inspection in its offices in the city of New York and in New Brunswick, in the state of New Jersey, and admits that on the 10th day of October, 1912, it received from said steamer Rochambeau (and claims it acted on behalf of the plaintiff herein and under direction of the plaintiff) 158 barrels of nickel matte, the same property as claimed by the plaintiff herein, and that said property was delivered to and received by said defendant only under and pursuant to, and subject to the terms and conditions of a certain contract made and entered into by said express company with the plaintiff herein, and that the charge and rate for its delivery at New Brunswick, N. J., was the charge based upon the schedules of said company, and that the amount charged herein was in accordance with the Interstate

Commerce Commission schedules, which have been filed as to its rates with the said Interstate Commerce Commission.

Defendant failed to show that the merchandise as hereinabove stated was received by it as the agent of the plaintiff, nor was any proof adduced by the defendant that the customhouse brokers, as agent of the plaintiff and its representative, had authorized or directed or assumed the responsibility to forward the merchandise from said steamer to the plaintiff's factory by any other authorized agency than the American Express Company; nor was the defendant authorized by the customhouse brokers or by the plaintiff to strike from said order the word "American" and insert its own express company therein as the carrier. The defendant further contends that, if it would refund the amount claimed herein, it would be a form of rebating, which is prohibited by the Interstate Commerce Act, and for which it would be liable to a penalty.

The points arising herein are somewhat novel. True, if the relationship of *shipper* and *carrier* existed between the plaintiff and defendant, the defendant overcharged or misrouted the plaintiff's property, and if a demand for the refund of the charges for carriage was insisted upon before the delivery of the merchandise, a different question would arise, which would be for the Interstate Commerce Commission to pass upon, and this court would thereupon be without jurisdiction of the subject-matter involved herein. But the relationship of *shipper* and *carrier* is *not involved in this action;* the defendant assumed the responsibility without authority, and any money paid to it by the plaintiff on demand for the delivery of the merchandise would be money paid under protest, and without authority in law, by reason that the relationship of *shipper and carrier did not exist.* It is an assumption of authority which was unauthorized by the acts of the parties.

[2] In reverting to the question, even if the relationship of *shipper* and *carrier* did exist, as was stated in Clancy v. Dutton, 129 App. Div. 23–25, 113 N. Y. Supp. 124, to constitute a voluntary payment the party paying must have had the freedom of exercising his will. When he acts under a specie of compulsion the payment is not voluntary, and if a party has in his possession property belonging to another, and refuses to deliver said property to that other unless the latter pays a sum of money which he has no right to receive, and in order to obtain possession of his property the owner pays that sum, the money so paid is a payment made by compulsion, and may be recovered back. Harmony v. Bingham, 12 N. Y. 99, 117, 62 Am. Dec. 142; Stenton v. Jerome, 54 N. Y. 480; Scholey v. Mumford, 60 N. Y. 498; Baldwin v. Liverpool G. W. S. S. Co., 74 N. Y. 125, 30 Am. Rep. 277; Spann v. Erie Boatmans Trans. Co., 11 Misc. Rep. 680, 33 N. Y. Supp. 566; see authorities cited to the same effect under 1 N. Y. Annotated Digest, 761.

Under Harmony v. Bingham, above cited, it shows that this rule is supported by an unbroken line of authorities from 1854 to date. In Pennsylvania Railroad Co. v. Titus, 156 App. Div. 830, 833, 142 N. Y. Supp. 43, which was an action brought to recover balances due for the

carriage of freight in compliance with the Interstate Commerce Law, and where a mistake was made in the charges, the court said on page 832 of 156 App. Div., page 45 of 142 N. Y. Supp.:

"It is contended in behalf of the plaintiff that the provisions of the Interstate Commerce Act, designed to secure equality in shipping rates (Act Feb. 19, 1903, 32 Stat. 847, c. 708 [U. S. Comp. St. Supp. 1911, p. 1309]), and the public policy of the Congress manifested thereby, imperatively require that the consignee shall be held liable where the carrier has, through mistake or inadvertence, thus delivered goods without requiring payment of the full lawful rate of freight. It is well settled that it is unlawful for a carrier to contract to carry interstate freight at a lower rate than its duly scheduled tariff rates, and that neither by contract nor through mistake or inadvertence can it estop itself from demanding and collecting the balance of the lawful rate, where it has delivered goods without charging the same in full [citing authorities]. It does not follow, however, that the consignee is liable. It is not claimed, and I do not understand, that the Interstate Commerce Act has made any change in the law with respect to the liability of a consignee for freight charges. The consignor or shipper, of course, is liable for such charges, for the contract is made with him, and he induces the carrier to transport the freight. 2 Hutch. Carriers (3d Ed.) § 810; Central R. R. v. MacCartney, 68 N. J. Law, 165 [52 Atl. 575]. But there is no contractual relation between the carrier and the consignee, by the mere designation of the latter as consignee, which obligates him to receive the goods or to pay the freight. Merrick v. Gordon, 20 N. Y. 94. Of course, if the consignee accepts the goods with notice that the carrier has a lien for a specified amount, thereby depriving the carrier of its lien, he becomes obligated by an implied contract to pay the charges. Union Pac. R. R. v. American Smelting & Refining Co. [202 Fed. 720, 121 C. C. A. 182], supra; Davison v. City Bank, 57 N. Y. 81; Sheets v. Wilgus, 56 Barb. 662. But if the carrier induces him to accept the goods on the theory that the freight charges are as stated, there is no principle upon which he thereby becomes liable to the carrier for the difference between the freight charges thus paid and those which the carrier by law was required to charge. Central R. R. v. MacCartney, supra; Hutch. Carriers (3d Ed.) § 807. Presumptively the consignee of goods is the owner thereof, and very often he is so in fact; but that is not conclusive. Hutch. Carriers (3d Ed.) § 807."

Defendant's contention is that the only proper course by which the shipper can obtain the refund by a common carrier of money paid as charges for an interstate transaction is by application to the Interstate Commerce Commission in the first instance, and the enforcement of the commissioners' orders in the federal court if the carrier refuses to comply with them, and relies upon the reports and rulings of the Interstate Commerce Commission, whose opinion in matters respecting the effect of the act to regulate commerce is entitled to great weight, and cites the Commission's Conference Rulings Bulletin No. 6, issued by order of the Interstate Commerce Commission on April 1, 1913, and the rulings therein stated as authority to the effect that the remedy of the plaintiff is to apply to the Interstate Commerce Commission to recover the amount claimed herein, and not to a state court for redress.

The relationship that was pointed out above of shipper and carrier does not exist between the plaintiff and defendant herein, except in so far as defendant, being a common carrier, did under the order convey the plaintiff's property from the port of New York to the place of business of the plaintiff at New Brunswick, N. J., its destination, with-

out authority from the plaintiff or its representative; and for such services as carrier defendant could not claim that it is a federal question for the federal courts or for the Interstate Commerce Commission to pass upon. The redress which plaintiff seeks herein may not be a question for the federal court or for the Interstate Commerce Commission to dispose of. No relation of carrier and shipper can be claimed. The assumption of authority by the defendant to take possession of plaintiff's property, and upon delivering same at its destination charge carriage therefor, is without authority in law. By the examination of the bulletin of the Interstate Commerce Commission, known as Conference Rulings Bulletin No. 6, issued April 1, 1913, containing conference rulings of the commission, I cannot find therein from its examination a decided ruling upon the question whether the relationship of shipper and carrier does not exist under which, as contended by the defendant, the plaintiff is bound by such rulings. In Shulthis v. McDougal, 225 U. S. 561, 32 Sup. Ct. 704, 56 L. Ed. 1205, the Supreme Court said:

"A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends."

And as to when the action "arises" under the law of the United States the United States Supreme Court has said:

"But a suit does not so arise unless it really and substantially involves a dispute or controversy as to the effect or construction of the Constitution, or validity or construction of the laws or treaties of the United States, upon the determination of which the result depends, and which appears in the record by plaintiff's pleadings." Spencer v. Duplan Silk Co., 191 U. S. 526, 24 Sup. Ct. 174, 48 L. Ed. 287, quoted with approval in Lovell v. Newman, 227 U. S. 412, 33 Sup. Ct. 375, 57 L. Ed. 577.

In the question here as to the jurisdiction of the court, the same ruling would apply on an application in the removal of a case against a common carrier from the state court to the federal District Courts, and it has been held, under the federal Judiciary Act (section 28, Act March 3, 1911, c. 231, 36 Stat. 1094 [U. S. Comp. St. Supp. 1911, p. 140]), and therein provides, that any suit of a civil nature arising under the Constitution or laws of the United States of which the federal District Courts are given original jurisdiction, which is brought in any state court, may be removed by it to the federal District Court. Section 24, subdivision 1, gives the District Court original jurisdiction of all civil suits where the matter of controversy exceeds $3,000, and arises under the Constitution or laws of the United States or between citizens of different states, provided that the provision as to the value of the matter in controversy shall not apply to the cases mentioned in the succeeding paragraphs of the section. Subdivision 8 gives the District Courts original jurisdiction of all suits arising under any law regulating commerce, except where exclusive jurisdiction is conferred upon the Commerce Court. Held that, to authorize removal to the federal District Court on the ground that the suit arises under a law

regulating commerce, the complaint must affirmatively show that a federal question is involved, or that the validity or construction of law of the United States is necessary to the determination of the case.

An action under the Carmack Amendment of the Interstate Commerce Act (Act June 29, 1906, 34 Stat. 593, c. 3591, § 7, pars. 11, 12 [U. S. Comp. St. Supp. 1911, p. 1307]) against an interstate carrier for damages for loss of merchandise delivered to the defendant, the initial carrier, for interstate shipment, could not be removed to the federal court where the only question for determination was one of fact. Section 24 of the Judicial Act describes the suits in which the federal courts in the first instance have original jurisdiction, and subdivision 1 of that section provides that:

"The District Courts shall have original jurisdiction of all suits of a civil nature  *  *  *  where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars, and arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or is between citizens of different States;  *  *  *  provided, however, that the foregoing provision as to the sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section."

Subdivision 8 of section 24, a succeeding paragraph provides that:

"The District Courts of the United States shall have original jurisdiction  *  *  *  of all suits and proceedings arising under any law regulating commerce, except those suits and proceedings exclusive jurisdiction of which has been conferred upon the Commerce Court."

The United States Supreme Court has construed the meaning of the phrase "of all suits and proceedings arising under any law regulating commerce" as employed in the statute, and its interpretation of the statute, as evidenced by the decisions, leads to the irresistible conclusion that it is only when a federal question is involved, or the validity, construction, or interpretation of the laws of the United States are necessary to its determination, that a case is removable, and not where a question presented is one of fact only, even though the cause of action has its origin under the United States statute. Not alone must the question so arise, but it must appear affirmatively from the complaint that it will so arise before the case is removable. The rule is as follows, as stated in Shulthis v. McDougal, 225 U. S. 561, 32 Sup. Ct. 704, 56 L. Ed. 1205:

"Whether the jurisdiction depended on diverse citizenship alone, or on other grounds as well, must be determined from the complainant's statement of his own cause of action as set forth in the bill, regardless of questions that may have been brought into the suit by the answers or in the course of the subsequent proceedings.  *  *  *  It is not enough that grounds of jurisdiction other than diverse citizenship may be inferred argumentatively from the statements in the bill, for jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth."

In the case of Myrtle v. Nevada, etc., Ry. (C. C.) 137 Fed. 193, the federal judge remanded the case to the state court and said:

"To entitle the defendant to removal, it must show that the action arises under the act of Congress; that the plaintiff claims a legal right thereunder, which legal right is controverted by the defendant. The controversy must

be one as to the construction of the statute, as distinguished from the questions of fact. It does not appear in the present case that there is any controversy between the parties as to the construction of the law. That question has been settled by the decision of the Supreme Court in Johnson v. Southern Pacific R., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363. Is there any federal question involved in this case? A federal question which will confer jurisdiction upon a United States court, either *by original process or by removal, must be a question of law as stated by the plaintiff in his complaint, and not a question of fact. Where the facts only are in dispute, and the federal law governing the case is uncontroverted, the United States court cannot take jurisdiction.* When a legal question arising under the Constitution or * * * a treaty of the United States is decided by the Supreme Court it ceases to be a federal question. State of Kansas v. Bradley (C. C.) 26 Fed. 289. * * * The question of fact as to whether the defendant was engaged in interstate commerce, and whether, if so engaged, its cars were coupled as provided for in said act, can be tried and determined in the state court as well as here."

In Nelson v. Southern Ry. (C. C.) 172 Fed. 478 (Cir. Ct. Georgia, June, 1909), an action was brought under the Employers' Liability Act. The federal judge remanded the action to the state court, saying:

"To justify a removal, under the provisions of the act of March, 1887–88, invoked here, the final determination of the case must depend upon the construction of the act of Congress—here the Employers' Liability Act of 1908 (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]). It is not sufficient that the inquiry will be, as the trial progresses, Do the facts measure up to this law of Congress? nor that, in the trial of the case, the application of the law to the facts will be often necessary; but it must appear that the final decision of the case will be controlled by the construction of the act. The meaning of the law must be in question, and not merely the sufficiency of the fact. * * * A suit, as has been pointed out, may well be based on a law without involving, in any way, the construction of the law."

See Hubbard v. Chicago, M. & St. P. Ry. (C. C.) 176 Fed. 994 (Cir. Ct. Minnesota, February, 1910).

It is apparent to the court that a federal question is not involved herein, as appears from the facts alleged in the complaint; nor can a federal question arise herein by the answer alleging that an interstate question of commerce arose, and that it is for the Interstate Commerce Commission to decide. It must appear from the complaint that such a question arises before this court can be ousted from its jurisdiction. The complaint seeks to recover the sum of $513.50 for money obtained from the plaintiff under protest, claiming thereby that defendant was without authority to demand and receive from the plaintiff that amount as a condition to the surrender of the goods alleged to have been tortiously seized and converted by the defendant, in the absence of any rquest or consent of any kind on the part of the plaintiff. There is nothing in the complaint, from its perusal, to indicate that the action is brought under the so-called Interstate Commerce Act, which Congress on June 29, 1906, enacted, and which is known as the Hepburn Act, and which included an amendment to section 20 of the original act, known as the Carmack Amendment (Act June 29, 1906, 34 Stat. 593, c. 3591, § 7, pars. 11, 12 [U. S. Comp. St. Supp. 1911, p. 1307]).

Nor does the question arise that it was the purpose of Congress that the Interstate Commerce Commission should regulate all questions

concerning the charges to be made by a carrier to a shipper, assuming the existence of such relation to be conceded; it was certainly never the intention of Congress to legislate that the Interstate Commerce Commission should be the only tribunal before which it would be possible to adjudicate the question as to whether or not such relation ever came into being. The suggestion that if defendant, as carrier, would overcharge plaintiff, as shipper, for this merchandise, without authority under the Interstate Commerce Act, and under its schedule wherein the charges are fixed (the exclusive jurisdiction of the Interstate Commerce Commission being confined by sections 8 and 9 to the general subject-matters of the act; i. e., the securing of equal and reasonable rates, and not applying to any case where neither the reasonableness nor the equality of the rate is involved), the only proper course by which a shipper can obtain the refunding by a common carrier of money paid as charges for interstate transportation is by an application to the Interstate Commerce Commission, is quite unfounded. The provision under which reparation proceedings may be brought before the Interstate Commerce Commission is section 8, which provides:

"That in case any common carrier * * * shall do, cause to be done, or permit to be done, any act, matter or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured."

Section 9, which vests in the United States courts or in the Commerce Commission exclusive jurisdiction, refers only to claims which are expressly based upon the causes of action specified in section 8. Van Patten v. Chicago, M. & St. P. R. R. (C. C.) 74 Fed. 981; Edmunds v. Illinois Central (C. C.) 80 Fed. 79.

It is obvious that the claim here presented is not because of any matter or thing prohibited or declared unlawful by the Interstate Commerce Act, but because of something which would be quite unlawful entirely independently of the act. The present case is not that of "a shipper seeking reparation predicted upon the unreasonableness of the established rates," who, according to the Supreme Court of the United States, in Texas & Pacific Railroad Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, "must, under the act to regulate commerce, primarily invoke redress to the Interstate Commerce Commission." No question is here involved as to the reasonableness or unreasonableness of any rate, nor is the proceeding one for the alteration of an established schedule. The state court has jurisdiction for the recovery of an unlawful additional or extra charge made by the carrier over and above the regularly established rate. In Hardaway v. Southern Railway Co., 90 S. C. 475, 73 S. E. 1020, Ann. Cas. 1913D, 266, the court said:

"We see nothing in the Abilene Case which is inconsistent with the jurisdiction of the state court in this case, for clearly there is not in this case any question as to the reasonableness of any rate."

In Banner v. Wabash R. R. Co., 131 Iowa, 405, 108 N. W. 759, is an illustration of the limits of the doctrine contended for by defendant.

There plaintiff made an interstate shipment of 16 head of stock in an emigrant car. The railroad's rules fixed the rate for such cars, limiting the number of head of stock to be shipped in one car to 10, and providing that the freight charge for animals in excess of such number should be at a certain rate, fixing an arbitrary weight upon which the computation should be made. Six of the cattle were calves, weighing 300 pounds each, and before plaintiff was allowed to remove his property he was obliged to pay the carload price of the car of stock between the points of carriage in addition to the charge for an emigrant car. The same jurisdictional point was raised by the defendant, at which the court, dismissing it, said:

"The primary question is whether the defendant demanded and collected a greater sum than it was authorized to charge by its schedules of rates and fares printed, posted, and filed with the Interstate Commerce Commission; if it did, the plaintiff is entitled to recover, and the court had jurisdiction because the suit is not to recover an overcharge under the Commerce Act, but to recover back a wholly unjust and unauthorized exaction, one demanded and collected not only in violation of the act itself, but in violation of the contract made with the plaintiff."

In Kansas City Southern Railway Co. v. C. H. Albers Commission Co., 79 Kan. 59, 99 Pac. 819, the Supreme Court of Kansas, dismissing the same contention now advanced by defendants, said:

"It is argued that the District Court did not have jurisdiction of this case, for the reason that the Interstate Commerce Act gives exclusive jurisdiction to the federal courts in actions to recover overcharges made in violation of that act. This action, however, is not one to recover overcharges paid in violation of that act. The overcharges sought to be recovered here consist of payments made in excess of the proper charges stipulated in a contract of shipment, to which the provisions of that act have no application, and therefore the question of jurisdiction does not arise." Carlisle v. Mo. Pac. R. R., 168 Mo. 652, 68 S. W. 898; Wabash R. R. v. Sloop, 200 Mo. 198, 98 S. W. 607; Pine Tree Lumber Co. v. Chicago, etc., Ry., 123 La. 583, 49 South. 202.

. A fortiori, where the money demanded of the carrier is not even an overcharge for transportation, but is in the nature of damages for a tort claim, the state courts have jurisdiction, and the Interstate Commerce Commission has none. In Galveston Ry. v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516, Mr. Justice Lamar said:

"The jurisdiction of the state court was attacked, first, on the ground that section 9 of the original act of 1887 provided that persons damaged by a violation of the statute 'might make complaint before the commission * * * or in any District or Circuit Court of the United States.' 14 Stat. 379. It was contended that Texas & Pacific Ry. v. Abilene Oil Co., 204 U. S. 426 [27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075], ruled that this jurisdiction was exclusive, and from that it was argued that no suit could be maintained in a state court on any cause of action created either by the original act of 1887 or by the amendment of 1906. But damage caused by failure to deliver goods is in no way traceable to a violation of the statute, and is not therefore within the provisions of sections 8 and 9 of the act to regulate commerce. Atlantic Coast Line v. Riverside Mills, 219 U. S. 186, 208 [31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7]."

Defendant had no authority in accepting the order for the merchandise, even if the name of the "American" was stricken out and the word "Adams" inserted therein. It was without authority in the

premises and assumed something it had no right to do, by taking possession of plaintiff's property, and it was a tortious act if the overcharges, when demanded, were refused, and a liability might arise wherein the defendant would be chargeable with a crime in vesting itself with property without the jurisdiction of the owner thereof; therefore, it being a tortious act in itself, there is authority for this. As was stated in Pecos Ry. v. Porter, 156 S. W. 267, by the Texas Court of Civil Appeals:

"As we understand the duties, powers, and authorities of the Interstate Commerce Commission, it has no right to adjudicate a question of damage for conversion."

See to the same effect Pittsburgh, etc., Ry. v. Wood, 45 Ind. App. 1, 84 N. E. 1009, 88 N. E. 709; Olcovich v. Grand Trunk Ry., 20 Cal. App. 349, 129 Pac. 290; Pittsburgh, etc., Ry. v. Knox, 177 Ind. 344, 98 N. E. 295.

It can be clearly understood that Congress never intended to deprive the state court of its jurisdiction, or to prevent a party from maintaining actions for breaches of duty in a carrier which would give rise to causes of action at common law or under the state statute. More broadly stated, the exclusive jurisdiction of the Commission is restricted to matters involved in its peculiar and particular jurisdiction; i. e., its right to establish reasonable and uniform rates. Lilly v. Northern Pac. Ry., 64 Wash. 589, 117 Pac. 401; Robinson v. B. & O. R. R., 64 W. Va. 406, 63 S. E. 323; M., K. & T. Ry. v. New Era Milling Co., 79 Kan. 435, 100 Pac. 273.

Defendant lays great stress upon the so-called conference rulings of the Interstate Commerce Commission, but from an examination of such rulings, to which the court's attention has been called, as to the repayment of money exacted from the plaintiff, which, if illegal, would subject it to a crime unless such repayment was expressly sanctioned by the Interstate Commerce Commission, I fail to find in the conference rulings anything sanctioning any such rule or decision or authority, because it is apparent to reasoning and common sense that a carrier would have a perfect right to make a repayment of moneys exacted for interstate commerce transportation without order of the Commission, so long as the repayment does not impinge upon the regular rate established by the tariffs, and is not, in fact, a rebate. In other words, if a carrier has by mistake exacted an overcharge from a shipper, neither the Interstate Commerce Act nor the Interstate Commerce Commission has gone to the extent of holding that the carrier cannot legally rectify its error without going to the trouble of securing the order from the commission. In ruling 49 the word "refund" obviously means a refund below the published tariff charge, or, in other words, an unlawful rebate, with which we are not concerned. Ruling 214, subdivisions "d" and "f," moreover, clearly permit a carrier which has misrouted a shipment and has caused extra expense to the shipper over and above the lawful charges, to return the overcharge to the shipper; the only prerequisite being a distinct admission of mistake on its part. Also rule 198, where the right and privilege of a misrouting carrier to pay the shipper the damages arising from a misrouting

is clearly recognized.  Ruling 217 again clearly recognizes the right of the carrier to return to destination, free of charge, a package which it may have carried beyond that point.  Ruling 206 explicitly makes it the duty of a carrier guilty of misrouting to pay the additional cost.

I have examined the authorities cited by the defendant in conjunction with the rulings of the Interstate Commerce Commission.  The case cited of Baltimore & Ohio Railroad v. La Due, 128 App. Div. 595, 112 N. Y. Supp. 964, rests clearly upon the proposition that, inasmuch as a rate cannot be created by private agreement, the shipper may not recover the difference between the rate agreed and the rate established by law.  In fact, no question of jurisdiction of the state courts was really involved, for no court—not even the Interstate Commerce Commission itself—could have allowed the shipper's claim without first, as a preliminary, establishing the unreasonableness of the established rate.  Of course the published rate is the lawful rate, and is the one that must be collected by the carrier, always assuming, however, that the possession of the freight by the carrier is lawful and with the authority and consent of the owner.  This is all that is held in such cases as A. J. Poor Grain Co. v. C., B. & Q. Ry., 12 Interst. Com. R. 418.

We may equally concede that, where a carrier lawfully obtains possession of goods, he is entitled to collect the established rate for transporting them, independently of the knowledge of the shipper as to the amount of the rate, and even independently of the existence of any agreement between shipper and carrier for less than the established rate.  Such is the holding of the La Due Case, 128 App. Div. 595, 112 N. Y. Supp. 964, and of the Hefley Case, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910, and of the Mugg Case, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011.  All that they hold is that the established rate is the rate filed with the Commission and fixed by law, for a shipment conceded to have been intrusted by the shipper to the carrier. They can have no application where the carrier was never intrusted with the possession of goods, but seized them on a delivery order which it had itself altered.

The Abilene Case, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, is in line with the preceding cases, and its limitations have been pointed out in the later case, in the Supreme Court, of Galveston v. Wallace, 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516.

Boston & Maine R. R. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. ——, and Atchison, Topeka & Santa Fé R. R. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. ——, are cases of tariffs filed with the Commission covering a limitation of liability based upon a graduated scale of charges.  The court holds in both cases that tariffs filed with the Commission become pro hac vice the law of the land and supersede any state regulations with respect to the limitation of liability.  They do not decide that a carrier is entitled to collect the amount of a rate filed with the Interstate Commerce Commission on a shipment which came into the hands of the carrier without any authority of its owner and solely through the carrier's own tort.

The defendant by sequestrating the property to its own use without authority for its possession under an order, could not give itself a

lien for the carriage of the property without the consent, sanction, and approval of the plaintiff. No provision in the federal act can be found, nor any ruling of the Interstate Commerce Commission can be found, wherein is given the right to a railroad company having property unlawfully in its possession to withhold the property for its carriage charges and claim a lien thereon.

I have failed to find, from an exhaustive research made upon the question involved herein and upon the authorities cited by the defendant herein, any authority for the proposition that a carrier who, on documents which it has itself altered, wholly without authority from the true owner, when no relation of shipper and carrier exists, has taken possession of the goods and has carried them over the state line, may compel such owner to appeal to the Interstate Commerce Commission for the return of the moneys paid by him in order to recover possession of his goods. Congress never intended to provide, nor have they provided, that such a situation, involving no question of the reasonableness of rates to be charged to a shipper by a carrier, is a transaction involving interstate commerce which should be cognizable only before the Interstate Commerce Commission.

From the reasoning of the authorities cited herein I am of the opinion that no federal question arises, nor does it affirmatively appear to exist from an examination of the complaint herein. Neither is the validity or interpretation of the law under which the action has its origin in question, and for that reason, in my judgment, the matter can be properly disposed of in the state court. The only questions there to be determined, as appears from the complaint, are questions of fact, and the state courts are not denied jurisdiction upon mere questions of fact, even though they arise or be based or have their origin under laws of the United States.

The motion for a new trial must therefore be denied. Settle order on one day's notice.